No. 23-1418

## IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

STATE OF WEST VIRGINIA,

*Petitioner,*

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.,*

*Respondents,*

On Petition for Review from a
Final Agency Action of the United States Environmental Protection Agency
(EPA–R03–OAR–2021–0873)

## PETITIONER'S OPPOSITION TO RESPONDENTS' MOTION TO TRANSFER OR DISMISS THE PETITION FOR REVIEW

PATRICK MORRISEY
  *Attorney General*

OFFICE OF THE WEST
VIRGINIA ATTORNEY
GENERAL
1900 Kanawha Blvd., East
Building 1, Room E-26
Charleston, WV 25305
Phone: (304) 558-2021
lindsay.s.see@wvago.gov

LINDSAY S. SEE
  *Solicitor General*
  *Counsel of Record*

MICHAEL R. WILLIAMS
  *Senior Deputy Solicitor General*

*Counsel for Petitioner State of West Virginia*

# TABLE OF CONTENTS

Introduction................................................................................................1

Background ................................................................................................2

I.      The Clean Air Act Generally.............................................................2

II.     EPA's 2015 Ozone NAAQS and the Ozone Transport SIP Call.............4

III.    West Virginia's Interstate Transport SIP .........................................5

IV.     EPA's Proposed Disapproval of West Virginia's SIP............................6

V.      EPA's Final Disapproval of West Virginia's SIP ................................8

VI.     West Virginia's Petition for Review.................................................10

Standard...................................................................................................11

Argument..................................................................................................11

I.      The Court should not transfer this challenge because it
        belongs in the Fourth Circuit.........................................................12

        A.      EPA's disapproval of West Virginia's SIP was a locally
                or regionally applicable action..............................................13

        B.      EPA's disapproval of West Virginia's SIP was not
                nationally applicable just because EPA used the
                same methods in multiple disapprovals published together........15

        C.      EPA's disapproval of West Virginia's SIP was not based
                on a genuine determination of nationwide scope or effect...........18

II.     The Court should not dismiss this challenge because EPA has
        forfeited any argument for dismissal.............................................20

Conclusion................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*1000 Friends of Maryland v. Browner,*
  265 F.3d 216 (4th Cir. 2001)................................................................15

*Am. Road & Trans. Builders Ass'n v. EPA,*
  705 F.3d 453 (D.C. Cir. 2013)....................................................1, 12, 13

*Arkansas v. EPA,*
  No. 23-1320 (8th Cir. Apr. 25, 2023)..............................................2, 11

*ATK Launch Sys., Inc. v. EPA,*
  651 F.3d 1194 (10th Cir. 2011)..........................................13, 16, 17

*Chevron U.S.A. Inc. v. EPA,*
  45 F.4th 380 (D.C. Cir. 2022) ...........................................................16, 21

*Contrast with Lubrizol Corp. v. Train,*
  547 F.2d 310 (6th Cir. 1976)...............................................................16

*Foster v. Univ. of Md.-E. Shore,*
  787 F.3d 243 (4th Cir. 2015)...............................................................20

*Mayor & City Council of Balt. v. BP PLC,*
  31 F.4th 178 (4th Cir. 2022) .................................................................2

*Mirant Potomac River, LLC v. EPA,*
  577 F.3d 223 (4th Cir. 2009)................................................................3

*Mitrano v. Hawes,*
  377 F.3d 402 (4th Cir. 2004).............................................................11

*Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.,*
  545 U.S. 967 (2005)............................................................................15

*Nat'l Parks Conservation Ass'n v. McCarthy,*
  816 F.3d 989 (8th Cir. 2016)...............................................................13

*Nat'l Res. Def. Council, Inc. v. S. Coast Air Quality Mgmt. Dist.,*
  651 F.3d 1066 (9th Cir. 2011).............................................................13

*New York v. EPA,*
  964 F.3d 1214 (D.C. Cir. 2020)............................................................8

## TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

*North Carolina ex rel. Cooper v. Tenn. Valley Auth.*,
  615 F.3d 291 (4th Cir. 2010)............................................................2, 3, 14

*PDK Lab'ys Inc. v. DEA*,
  362 F.3d 786 (D.C. Cir. 2004)..................................................................11

*S. Ill. Power Coop. v. EPA*,
  863 F.3d 666 (7th Cir. 2017).....................................................................17

*SAS Inst., Inc. v. Iancu*,
  138 S. Ct. 1348 (2018) .............................................................................17

*Sebelius v. Auburn Reg'l Med. Ctr.*,
  568 U.S. 145 (2013)...................................................................................21

*Sierra Club v. EPA*,
  47 F.4th 738 (D.C. Cir. 2022) ...................................................12, 16, 18

*Sierra Club v. EPA*,
  939 F.3d 649 (5th Cir. 2019)......................................................................4

*Tex. Mun. Power Agency v. EPA*,
  89 F.3d 858 (D.C. Cir. 1996)..............................................................14, 21

*Texas v. EPA*,
  706 F. App'x 159 (5th Cir. 2017).............................................................19

*Texas v. EPA*,
  829 F.3d 405 (5th Cir. 2016)................................11, 13, 16, 17, 18, 19

*Texas v. EPA*,
  983 F.3d 826 (5th Cir. 2020).............................................................12, 18

*Texas v. EPA*,
  No. 23-60069 (5th Cir. May 1, 2023)......................2, 11, 14, 16, 17

*Train v. Nat. Res. Def. Council, Inc.*,
  421 U.S. 60 (1975)......................................................................................2

*Union Elec. Co. v. EPA*,
  427 U.S. 246 (1976)....................................................................................3

## TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

*Utah v. EPA*,
   No. 23-9509 (10th Cir. Apr. 27, 2023)...............................................11

*Virginia v. Browner*,
   80 F.3d 869 (4th Cir. 1996)..................................................................2

*W. Va. Chamber of Comm. v. Browner*,
   No. 98-1013, 1998 WL 827315 (4th Cir. Dec. 1, 1998)..............16, 17

*West Virginia v. EPA*,
   142 S. Ct. 2587 (2022) .........................................................................3

*Whitman v. Am. Trucking Ass'ns*,
   531 U.S. 457 (2001)..............................................................................3


**Statutes**

42 U.S.C. § 7408 ..........................................................................................3

42 U.S.C. § 7410 .......................................................................................3, 4

42 U.S.C. § 7607 ...............................................................1, 2, 12, 13, 18, 20


**Regulatory Actions**

40 C.F.R. § 52.38 ..........................................................................................4

80 Fed. Reg. 65,292 (Oct. 26, 2015) ...........................................................4

84 Fed. Reg. 69,331 (Dec. 18, 2019) .........................................................14

87 Fed. Reg. 9,516 (Feb. 22, 2022) .............................................6, 7, 8, 19

88 Fed. Reg. 9,336 (Feb. 13, 2023) ....................8, 9, 10, 14, 17, 19, 20


**Rule**

Fed. R. App. P. 15......................................................................................10

iv

## TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

**Other Authorities**

Memo. from Peter Tsirigotis, Dir., to the Reg'l Air Division Dirs.,
    Regions 1-10, on Info. on the Interstate Transport State
    Implementation Plan Submissions for the 2015 Ozone
    National Air Quality Standards Under Clean Air Act Section
    110(a)(2)(D)(i)(I) (Mar. 27, 2018)......................................................4, 5, 15, 20

WVDEP, Comment Letter on Docket ID No. EPA-HQ-OAR-
    2021-0663 (Apr. 13, 2022) ....................................................................................8

WVDEP, West Virginia Supplement to the State
    Implementation Plan Revision for Clean Air Act
    § 110(a)(2)(A)-(M) Requirements for 2015 8-Hour Ozone
    NAAQS with the Demonstration of Compliance with
    the Good Neighbor Requirements of Clean Air Act
    Section 110(a)(2)(D)(i)(I) (2019) ......................................................5, 6, 10, 17

## INTRODUCTION

To hear the Environmental Protection Agency tell it, just about every action under the Clean Air Act should be filed in the D.C. Circuit. "[A]ir pollutants heed no boundaries," ECF 10 at 6, the agency intones, so this air-pollution-related action must be national, and all national actions under the Act belong in the D.C. Circuit, *id.* Applying this logic, EPA insists that the Court should transfer or dismiss this action.

Congress thought differently. The CAA provides that parties challenging "locally or regionally applicable" regulatory actions should file their petitions "in the United States Court of Appeals for the appropriate circuit." 42 U.S.C. § 7607(b)(1). And actions relating to state-implementation plans—like this one—are "the prototypical 'locally or regionally applicable' action[s]." *Am. Road & Trans. Builders Ass'n v. EPA*, 705 F.3d 453, 455 (D.C. Cir. 2013) (Kavanaugh, J.). The facts here bear that out. The West Virginia Department of Environmental Protection submitted a state-specific plan to a regional EPA administrator, EPA established a regional docket for the submission, EPA's regional administrator provided West-Virginia specific analysis, the regional administrator signed the West Virginia plan's proposed disapproval, and the agency directed persons who want the full basis for the disapproval to contact the regional office. All this is local—so West Virginia rightly filed with this Court.

EPA tries to recast the West-Virginia disapproval as a national one because the agency applied uniform standards to all the disapprovals that it

1

happened to issue around the same time; it also notes how it packaged those disapprovals together in the *Federal Register*. But no authority suggests those facts matter. And some overlap among actions is no reason to declare all of them "national." No wonder, then, that two circuits have already rejected these same arguments about these same kinds of actions. *See* Order, *Texas v. EPA*, No. 23-60069 (5th Cir. May 1, 2023), ECF No. 269-1 ("*Texas* Order"); Order, *Arkansas v. EPA*, No. 23-1320 (8th Cir. Apr. 25, 2023), Entry ID 5269098 ("*Arkansas* Order"). This Court should reject those arguments here, too.

## BACKGROUND

### I.    The Clean Air Act Generally

The CAA "establishes a program of cooperative federalism that allows the States, within limits established by federal minimum standards, to enact and administer their own regulatory programs, structured to meet their own particular needs." *Virginia v. Browner*, 80 F.3d 869, 883 (4th Cir. 1996) (cleaned up); *see also North Carolina ex rel. Cooper v. Tenn. Valley Auth.*, 615 F.3d 291, 306 (4th Cir. 2010) (explaining that the CAA embodies "a cooperative partnership with states"); *Mayor & City Council of Balt. v. BP PLC*, 31 F.4th 178, 216 (4th Cir. 2022) ("[T]hrough § 7607(b)(1), Congress intended … to vest state and local governments with the 'primary responsibility' of controlling and preventing air pollution."). Unlike the States, EPA "is relegated by the Act to a secondary role." *Train v. Nat. Res. Def. Council, Inc.*, 421 U.S. 60, 79 (1975).

This petition for review concerns the CAA's National Ambient Air Quality Standards, or NAAQS. After identifying air pollutants—like ozone—that endanger the public health and result from "numerous or diverse" sources, 42 U.S.C. § 7408(a)(1), EPA "establishes a NAAQS for each," *West Virginia v. EPA*, 142 S. Ct. 2587, 2600 (2022). The NAAQS is a limit representing "the maximum airborne concentration of [the] pollutant that the public health can tolerate." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 465 (2001). The Act then leaves it to the States to decide "which sources must reduce their pollution and by how much to meet the ambient pollution target." *West Virginia*, 142 S. Ct. at 2600. So again, like other parts of the Act, the NAAQS program "place[s] the primary responsibility for formulating pollution control strategies on the States." *Union Elec. Co. v. EPA*, 427 U.S. 246, 256 (1976).

States discharge their NAAQS-related responsibilities by submitting state implementation plans, or SIPs. *North Carolina*, 615 F.3d at 299. As part of that process, "each SIP must consider the impact of emissions within the state on the ability of other states to meet NAAQS." *Id.* at 300 (citing 42 U.S.C. § 7410(a)(2)(D)). This particular provision—sometimes called the "good neighbor" or interstate-transport provision, *Mirant Potomac River, LLC v. EPA*, 577 F.3d 223, 227 (4th Cir. 2009)—ensures that States cannot "essentially export[] most of their emissions to other regions by strategically positioning sources along an arbitrary border line." *North Carolina*, 615 F.3d at 300. EPA "shall approve" the State's good-neighbor plans (and all other

parts of the SIP) so long as they "meet[] all [] applicable requirements of [the Act]." 42 U.S.C. § 7410(k)(3); *see also, e.g., Sierra Club v. EPA*, 939 F.3d 649, 655 (5th Cir. 2019) ("The EPA's role is confined to the ministerial function of reviewing SIPs for consistency with the Act's requirements." (cleaned up)).

## II.    EPA's 2015 Ozone NAAQS and the Ozone Transport SIP Call

In 2015, EPA revised its previously promulgated NAAQS for ozone, lowering the limit to 70 parts per billion. *See generally* 80 Fed. Reg. 65,292 (Oct. 26, 2015). EPA's revision obligated West Virginia to submit a SIP in line with the new NAAQS within three years of the EPA's action. *See* 42 U.S.C. § 7410(a)(1).

EPA provided limited guidance to States for developing their SIPs. Before, the agency had promulgated nationally applicable requirements for SIPs through notice-and-comment rulemaking. *See, e.g.*, 40 C.F.R. § 52.38. This time, though, EPA issued only a series of guidance memoranda a few months before the final deadline for submitting the SIPs. *See, e.g.*, Memo. from Peter Tsirigotis, Dir., to the Reg'l Air Division Dirs., Regions 1-10, on Info. on the Interstate Transport State Implementation Plan Submissions for the 2015 Ozone National Air Quality Standards Under Clean Air Act Section 110(a)(2)(D)(i)(I) (Mar. 27, 2018) ("Guidance Memo."), *available at* https://bit.ly/3Od73VL.

EPA's primary memorandum explained that States could "us[e] EPA's analytical approach" from prior federal implementation plans, "somewhat different analytical approaches within [EPA's typical four-step framework for

assessing good neighbor compliance]," or "alternative frameworks." Guidance Memo at 3. States were free to "supplement the information provided in [the] memorandum with any additional information that [States] believe[d] [wa]s relevant." *Id.* at 6. The memorandum also provided a "preliminary list" of "potential flexibilities" that States could employ in developing their plans. *Id.* at A-1 to A-3. EPA "recommend[ed] that states reach out to EPA Regional offices and work together to accomplish the goal of developing, submitting, and reviewing approvable SIPs." *Id.* at 6.

Altogether, EPA had suggested that States would enjoy the sort of freedom, flexibility, and control that Congress intended them to have under the CAA.

## III. West Virginia's Interstate Transport SIP

After submitting a plan to EPA addressing most of its SIP requirements in September 2018, the West Virginia Department of Environmental Protection submitted a supplement addressing the good-neighbor requirements in February 2019. *See* WVDEP, WEST VIRGINIA SUPPLEMENT TO THE STATE IMPLEMENTATION PLAN REVISION FOR CLEAN AIR ACT § 110(A)(2)(A)-(M) REQUIREMENTS FOR 2015 8-HOUR OZONE NAAQS WITH THE DEMONSTRATION OF COMPLIANCE WITH THE GOOD NEIGHBOR REQUIREMENTS OF CLEAN AIR ACT SECTION 110(A)(2)(D)(I)(I) (2019), *available at* https://bit.ly/3MqgGPD ("West Virginia SIP"). West Virginia submitted its plan to the regional administrator for EPA Region 3, and EPA opened a regional docket for it. *See* EPA-R03-OAR-2021-0873.

West Virginia's SIP explained that, excepting one pending legislative rule that incorporated the federal Cross-State Air Pollution Rule (CSAPR) and CSAPR Update Rule, "no additional highly cost-effective reductions are available for the 2015 ozone NAAQS." West Virginia SIP at 50. West Virginia reached that conclusion by following the four-step approach suggested by EPA in its 2018 guidance memorandum. *See id.* at 21-36. The State also noted that certain "flexibilities," as listed in the same 2018 EPA guidance memorandum, applied to West Virginia's particular case. *Id.* at 14-21. In conducting its analysis, West Virginia relied on the kinds of modeling and other data that EPA had approved in its guidance memoranda. *See id.* at 12 ("West Virginia considered the 2023 modeling conducted by EPA, Alpine, and LADCO, which were based on the 2023en platform, and the guidance provided in EPA's 2018 memorandum.").

## IV.    EPA's Proposed Disapproval of West Virginia's SIP

In February 2022, three years after West Virginia submitted its good-neighbor-related SIP, EPA published a proposed disapproval of the plan. *See* 87 Fed. Reg. 9,516 (Feb. 22, 2022). The action—which addressed West Virginia alone—had a local focus. The acting Region 3 administrator signed the proposed disapproval. *Id.* at 9,533. EPA stressed that commenters should submit items "in the Regional docket for this action," not the headquarters docket. *Id.* at 9,519. Before proceeding to the specifics of West Virginia's plan, the agency also discussed the four-step process developed in "prior *regional* rulemakings pursuant to the interstate transport provision," *id.* at 9,518

6

(emphasis added), and it explained how ozone transport presented a "*regional-*scale pollution problem," *id.* at 9,519 (emphasis added).  *See also id.* at 9,526 (describing the "'collective contribution' problem associated with *regional* ozone transport" (emphasis added)).

In the proposed disapproval, EPA rejected several aspects of West Virginia's SIP.  It agreed with West Virginia's acknowledgment that the State is "linked" in a material way to certain nonattainment or maintenance areas, which in turn requires the State to evaluate appropriate measures for reducing emissions.  But it rejected West Virginia's attempts to invoke any of the flexibilities that the agency had said might apply in addressing those linkages. 87 Fed. Reg. at 9,526.  Based on newly announced data and criteria, EPA also thought that the State had done insufficient analysis at the "Step 3" and "Step 4" steps of the analysis.  These steps consider what emission reductions would be necessary to eliminate West Virginia's "significant contributions" to non-attainment downwind and what measures West Virginia could implement to achieve those reductions.

Of relevance here, the regional acting administrator also announced that the EPA Administrator "intend[ed] to exercise the complete discretion afforded to him under the CAA" to declare that the disapproval was a determination of "nationwide scope or effect."  87 Fed. Reg. at 9,533.  EPA purported to make this determination because it was employing a "consistent" four-step framework, relying on "a single set" of modeling results, looking to the same analytic year and "receptors," and applying some undefined "set of

nationally consistent policy judgments." *Id.* In a footnote, the agency also declared that it would consider the action "nationally applicable" if it decided to issue "all of the proposed SIP disapproval actions with respect to obligations under CAA section 110(a)(2)(D)(i)(I) for the 2015 ozone NAAQS" together. *Id.* at 9,533 n.68.

## V. EPA's Final Disapproval of West Virginia's SIP

Both the WVDEP and the Midwest Ozone Group submitted extensive comments explaining why EPA would err in disapproving West Virginia's SIP. WVDEP's comment, for example, described how "EPA's failure to timely review" the SIP had "culminated in this proposed disapproval"; among other things, EPA had "reevaluated and modified without communication to states what it considers as acceptable." WVDEP, Comment Letter on Docket ID No. EPA-HQ-OAR-2021-0663 (Apr. 13, 2022), https://bit.ly/3W4hkpi. *Compare with New York v. EPA*, 964 F.3d 1214, 1222 (D.C. Cir. 2020) (holding that EPA acted arbitrarily and capriciously in disapproving state ozone interstate transport SIPs where it applied a "test [that was], at best, was a moving target and, at worst, demanded likely unattainable standards of proof").

The agency was unmoved, so it published a final rule in February 2023 reiterating its analysis from the proposed rule. *See* 88 Fed. Reg. 9,336 (Feb. 13, 2023). EPA packaged West Virginia's SIP disapproval with final disapprovals of eighteen other States' SIPs (along with partial disapprovals for two other States); the agency had proposed the disapprovals in twelve

separate notices from eight different EPA Regional Offices. *Id.* at 9,337. EPA had already acted on the "good neighbor" SIPs from 23 States and the District of Columbia, in twenty separate *Federal Register* notices. *Id.* at 9,362.

Several parts of the final disapproval spoke to the individualized, local, and regional nature of the decision. EPA's notice explained that "the contents of each individual state's submission were evaluated on their own merits." 88 Fed. Reg. at 9,354; *see also*, *e.g.*, *id.* at 9,353 ("The contribution modeling provided contributions to ozone from anthropogenic $NO_X$ and VOC emissions in each state, individually."). According to EPA, individual "states may [have] be[en] able to establish alternative approaches to addressing their interstate transport obligations for the 2015 ozone NAAQS that vary from a nationally uniform frame-work," and each SIP was to be judged "in light of the facts and circumstances of each particular state's submission." *Id.* at 9,340. What's more, the consolidated Federal Register notice provided only "a brief, high level overview of the SIP submissions and the EPA's evaluation and key bases for disapproval." *Id.* at 9,354. "The full basis for the EPA's disapprovals," EPA said, "[wa]s available in [the] relevant [regional office] Federal Register notifications of proposed disapproval for each state, in the technical support documents informing the proposed and final action, and in the responses to comments[.]" *Id.*; *see also id.* at 9,343 ("Our evaluation of the states' analyses was generally set forth in the [regional office] proposals[.]"). EPA also repeatedly acknowledged that ozone was a "regional air pollutant" that required "regional implementation of good neighbor obligations." *Id.* at 9,374.

9

As to West Virginia, the final disapproval references and relies on Region 3's reasoning, which the regional administrator had described in the proposed denial. *See* 88 Fed. Reg. at 9,360. EPA Headquarters did not conduct new technical analysis expanding on Region 3's work. Instead, EPA "finaliz[ed] disapproval of West Virginia's interstate transport SIP submission for the 2015 ozone NAAQS" on the same reasoning as before. *Id.* The final disapproval described the applicable geographic area as "statewide." *Id.* at 9,384.

Despite all that, EPA insisted that the action was "nationally applicable" because EPA had applied a "uniform legal interpretation" and "common" "analytical methods" that in turn applied to a "large number of states." 88 Fed. Reg. at 9,380. The EPA Administrator also insisted once more that he had "complete discretion" to label the action one with "nationwide scope or effect." *Id.* Beyond the reasons listed in the proposed disapproval, he exercised that discretion because he preferred "to take advantage of the D.C. Circuit's administrative law expertise" and avoid "piecemeal litigation." *Id.*

## VI. West Virginia's Petition for Review

West Virginia timely filed this challenge to the West Virginia SIP disapproval on April 14, 2023. Because the disapproval was regional and local, the State filed the petition here. West Virginia challenged only its own SIP disapproval. *See* Fed. R. App. P. 15(a)(2)(C).

As EPA notes, several other States have filed petitions for review as to their SIP disapprovals in their own "home" circuits. *See* ECF No. 10 at 13 n.4.

EPA has sought to transfer all of them. So far, two circuits have denied EPA's motions. *See Texas* Order, *supra*; *Arkansas* Order, *supra*. Another circuit deferred any decision until the merits panel is assigned. *See* Order, *Utah v. EPA*, No. 23-9509 (10th Cir. Apr. 27, 2023), ECF No. 010110851072. No court has agreed with EPA.

## STANDARD

The Court considers de novo whether this circuit is the proper venue for the petition—it "do[es] not defer to the agency's interpretation" of the CAA's venue statute. *Texas v. EPA*, 829 F.3d 405, 417-18 (5th Cir. 2016); *cf. Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004) (venue determination is reviewed de novo). Even were that not the case, agency deference could not apply here because EPA believes "[t]he CAA's venue provision is unambiguous." ECF No. 10 at 14. "[D]eference to an agency's interpretation of a statute is not appropriate when the agency wrongly believes that interpretation is compelled by Congress." *PDK Lab'ys Inc. v. DEA*, 362 F.3d 786, 798 (D.C. Cir. 2004) (cleaned up).

## ARGUMENT

The Court should not send this case to the D.C. Circuit because the CAA's venue provision required West Virginia to file here. If the Court were to disagree, then it should transfer rather than dismiss the petition because EPA has waived any argument that dismissal is appropriate.

11

I.    **The Court should not transfer this challenge because it belongs in the Fourth Circuit.**

EPA misunderstands the relevant venue statute; precedent from its own favored court confirms as much. The statute contains two provisions explaining venue for a petition like this one. *See* 42 U.S.C. § 7607(b)(1). The first provision requires those who challenge "nationally applicable regulations" to file in the D.C. Circuit. *Id.* Yet the D.C. Circuit has held that SIP actions are "the prototypical 'locally or regionally applicable' action that may be challenged only in the appropriate regional court of appeals." *Am. Road*, 705 F.3d at 455 (cleaned up). The second provision says that an otherwise regionally or locally applicable action still belongs in the D.C. Circuit when it "is based on a determination of nationwide scope or effect." 42 U.S.C. § 7607(b)(1). To invoke that provision, EPA must "find[] and publish[]" that its action is based on that kind of a determination. *Id.* But *basing* a decision on nationwide scope and *publishing* that basis are two "distinct" requirements—so EPA can't just make an announcement and force everyone to file in the D.C. Circuit. *See Sierra Club v. EPA*, 47 F.4th 738, 745 (D.C. Cir. 2022); *accord Texas v. EPA*, 983 F.3d 826, 835 (5th Cir. 2020).

Under these venue provisions, this petition belongs in the Fourth Circuit. EPA's disapproval focused on West-Virginia-specific facts and has West-Virginia-specific outcomes. Every step along the way signaled that this action was a regional one. EPA cannot transform a regional action into a

12

national one by combining it with a few other States' disapprovals and labelling them a choice based on unspecified national policies.

### A. EPA's disapproval of West Virginia's SIP was a locally or regionally applicable action.

EPA's disapproval of the SIP at issue was a locally or regionally applicable action that belongs in the "appropriate [regional] circuit"—this one. 42 U.S.C. § 7607(b)(1). Recall how the D.C. Circuit, with then-Judge Kavanaugh writing, once held that SIP-related actions are "the prototypical 'locally or regionally applicable' action." *Am. Road*, 705 F.3d at 455 (citation omitted). That circuit was hardly alone. *See, e.g.*, *Nat'l Res. Def. Council, Inc. v. S. Coast Air Quality Mgmt. Dist.*, 651 F.3d 1066, 1071 (9th Cir. 2011) (explaining that an action was "locally or regionally applicable" action where it "concern[ed] only the SIP applicable to the Los Angeles area"); *Texas*, 829 F.3d at 424 (holding that SIP disapproval as to Texas and Oklahoma was "locally or regionally applicable" action); *Nat'l Parks Conservation Ass'n v. McCarthy*, 816 F.3d 989, 993 (8th Cir. 2016) (same as to Minnesota SIP approval). Indeed, EPA's own authorities acknowledge that a petition "attacking a purely local action such as a SIP" constitutes "an undisputably regional action." *ATK Launch Sys., Inc. v. EPA*, 651 F.3d 1194, 1199 (10th Cir. 2011).

The facts underlying West Virginia's petition confirm that it implicates "locally or regionally applicable" action. The specific disapproval challenged applies to West Virginia alone. And as described above, EPA's decision

13

documents were rife with references to the local or regional nature of the problem. The agency filed these documents on a regional docket, and the SIP was developed in coordination with regional officials. The agency then evaluated "the contents of each individual state's submission … on their own merits." 88 Fed. Reg. at 9,354. The denial hinged on West-Virginia-specific factors that looked to the regional office's analysis. *Id.* at 9,360. And while the final disapproval was "a brief, high[-]level overview of the SIP submissions and the EPA's evaluation and key bases for disapproval," further answers could be had only from the real decisionmaker here: the regional EPA office. *Id.* at 9,354. Facts like these led the Fifth Circuit to recently say that ozone SIP disapprovals in other States were "plainly local or regional." *Texas* Order, *supra*, at 10.

In the end, it makes good sense that West Virginia's SIP and the EPA action it prompted would be uniquely state-specific, local, and regional.[*] After all, "States are accorded flexibility in determining how their SIPs are structured." *North Carolina*, 615 F.3d at 299. That flexibility means SIPs will not be nationally uniform. Congress designed the "locally or regionally applicable" language for times like these. *See Tex. Mun. Power Agency v.*

---

[*] EPA recognized this reality when it approved 23 interstate-transport-related SIPs for the 2015 ozone standard. In all those, EPA directed parties to file any related petitions in the regional courts of appeal. *See, e.g.*, 84 Fed. Reg. 69,331 (Dec. 18, 2019) (Alaska); *see also* Utah's Resp. to Mot. To Transfer at 15 n.8, *Utah v. EPA*, No. 23-9509 (10th Cir. Apr. 6, 2013), ECF No. 010110839320 (listing the other 22 examples).

*EPA*, 89 F.3d 858, 866 (D.C. Cir. 1996) ("[Section] § 307(b)(1)'s 'locally applicable' clause … is relevant to … state implementation plans.").

**B. EPA's disapproval of West Virginia's SIP was not nationally applicable just because EPA used the same methods in multiple disapprovals published together.**

EPA cannot transform its local action into a national one by claiming that it "applie[d] a uniform and nationally consistent approach" to the SIPs it reviewed. ECF No. 10 at 15. The argument is a strange one because it would effectively render *every* EPA action a "nationally applicable" action, as EPA must always avoid "[u]nexplained inconsistency" in its regulatory efforts. *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005). It is also strange because EPA's own guidance suggested that the four-step framework that the agency now says unites all these actions is *not* a strict, binding requirement for ozone interstate transport SIPs. Guidance Memo. at 3. And it is extra strange because EPA is not even that clear about what elements it thinks are consistent, instead alluding to ill-defined "policy considerations," "legal interpretations," and "analytical methods." ECF No. 10 at 16.

In any event, courts have rejected EPA's prior efforts to conflate (a) a petition challenging a true "nationally applicable" standard (like, say, a NAAQS) with (b) a petition challenging a state-specific, localized action, like a SIP action. In *1000 Friends of Maryland v. Browner*, 265 F.3d 216, 224 (4th Cir. 2001), for example, this Court refused to treat a CAA petition for review

15

as a challenge to the national regulations themselves; the petitioner's real complaint stemmed from "EPA's use of the regulations" as applied to the facts of the case. Similarly, in *Chevron U.S.A. Inc. v. EPA*, 45 F.4th 380, 387 (D.C. Cir. 2022), the D.C. Circuit acknowledged that "many locally or regionally applicable actions may require interpretation of the Clean Air Act's statutory terms," but it stressed that "that kind of interpretive exercise alone does not transform a locally applicable action into a nationally applicable one." *See also Sierra Club*, 47 F.4th at 744. As one court has put it, the local or national nature of an action "turns on the legal impact" of that action, *Texas*, 829 F.3d at 419, which often has little to do with the standard that EPA might apply. That's true here, where the SIP approval turned on local eccentricities in both the facts and the law. *Contrast with Lubrizol Corp. v. Train,* 547 F.2d 310, 316 (6th Cir. 1976) (describing how an action could be national where, among other things, the regulations were "intended to apply uniformly throughout the country" *and* "no question of fact or law would vary by region").

EPA has no supporting authority for its contrary view. *See Texas* Order, *supra*, at 10 ("The EPA doesn't point to a single example of our circuit (or any of our sister circuits) granting a similar motion to transfer a petition challenging a SIP approval/denial to the D.C. Circuit."). It leans heavily on an unpublished—and therefore non-binding—decision from this Court. *See W. Va. Chamber of Comm. v. Browner,* No. 98-1013, 1998 WL 827315 (4th Cir. Dec. 1, 1998). But that case is about a "SIP Call," "an EPA rule calling for revision to any SIP not meeting a newly-established standard." *ATK Launch*

16

*Sys.*, 651 F.3d at 1199. A SIP Call applies to every State in the same way. *See Texas* Order, *supra*, at 10 (contrasting the national nature of a SIP call with the local nature of a SIP disapproval); *see also Texas*, 829 F.3d at 419. Further, the petitioner in *West Virginia Chamber* challenged a "national feature" of that "nationally applicable action"—namely, a small-business certification that applied to the whole regulatory effort. 1998 WL 827315, at *7. Even *West Virginia Chamber* recognized that venue "might lie in this Court" where the challenge pertains to something "unique" to the State's plan—which is the case here. *Id.* So *West Virginia Chamber* is distinguishable, as are the other cases EPA likes for much the same reason. *See, e.g., ATK Launch Sys.*, 651 F.3d at 1197 (addressing "attainment" or "nonattainment" areas identified by EPA under its power to make national—not state-specific—air quality designations); *S. Ill. Power Coop. v. EPA*, 863 F.3d 666, 671 (7th Cir. 2017) (same).

Left with no authority, EPA resorts to naked policy arguments, suggesting that inconsistent results could follow unless all the actions are sent to the D.C. Circuit. *But see SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1358 (2018) (rejecting an agency's view based on "better policy" where "the words on the page are clear"). Given that two circuits have already said they are retaining jurisdiction over ozone disapprovals, the prospect of putting all these cases in one court is long gone. Anyway, EPA said that each State's plan was "evaluated on [its] own merits," so a finding on one SIP should have little relevance to another. 88 Fed. Reg. at 9,354. A finding that West Virginia SIP

17

was improperly disapproved will not, for example, force a revision to other States' plans. Instead, the regional administrator will reevaluate West Virginia's plan alone. That hardly spells chaos. It reflects the sort of region-specific approach that Congress anticipated when it directed that some actions would not go to the D.C. Circuit.

### C. EPA's disapproval of West Virginia's SIP was not based on a genuine determination of nationwide scope or effect.

EPA also says that the West Virginia disapproval was based on a determination that it would have "nationwide scope or effect." 42 U.S.C. § 7607(b)(1). In places, EPA seems to argue that the Court must defer to that policy determination. ECF No. 10 at 19. If EPA truly thinks that, it is wrong—the Court must independently evaluate this purported "basis." *Sierra Club*, 47 F.4th at 746; *accord Texas*, 983 F.3d at 834 (noting court "independently determines" whether action was "based on a determination of nationwide scope or effect" (cleaned up)); *Texas*, 829 F.3d at 420-21.

EPA relies on a series of generalities to try to establish its "nationwide scope or effect." But "policy judgments," "consistent frameworks," "national consistency," and "avoiding inconsistent or inequitable results" are so vague as to provide no meaningful limiting principle. ECF No. 10 at 20-21. Indeed, EPA could attach these phrases to any action under the CAA—which would place all of them in the D.C. Circuit in direct contravention of Congress's express intent. *See, e.g.*, 42 U.S.C. § 7607(b)(1) (stating that at least some petitions for review addressing action "approving or promulgating any

18

implementation plan … [or] any denial or disapproval" could be venued in a regional circuit court). And EPA seems to have confused "nationwide scope" with any two actions that share some features, ECF No. 10 at 21 n.10—another understanding that the statute cannot sustain. Thus, the Court should not rely on "generalizations" like these to find a national scope, as they fall short of the "particularized factual findings" that the CAA contemplates. *Texas v. EPA*, 706 F. App'x 159, 165 (5th Cir. 2017); *see also Texas*, 829 F.3d at 422 (rejecting EPA's finding of nationwide scope where "EPA could not identify with particularity the determinations with nationwide scope or effect that formed the basis of the Final Rule").

What matters are determinations that "lie at the core of the agency action," *Texas*, 829 F.3d at 419, and those determinations confirm this disapproval is a local action. EPA's decision rested on its disagreement with State-specific facts and analyses, including the controls to be used, the import of mobile-source emissions, the appropriateness of considering international emissions, and other State-specific matters. The disapproval involved "a number of intensely factual determinations" that derived from the "particularities of the emissions sources" in West Virginia, *id.* at 421, including the State's heavy concentration of coal-fired power plants, *see, e.g.*, 87 Fed. Reg. at 9,529-31. These "highly fact-dependent actions" are "contextual and variable." *Texas*, 829 F.3d at 423-24. Just ask EPA: It stressed that each SIP was "evaluated on [its] own merits," 88 Fed. Reg. at 9,354, so it judged each plan "in light of the facts and circumstances of each particular state's

submissions," *id.* at 9,340. And though EPA waves at things like frameworks and policies, it has also stressed that neither the States nor EPA was bound to follow any defined procedure in putting together and reviewing the plans. They were instead applying a State-specific, iterative process between the State and the regional administrator. Guidance Memo. at 6.

At bottom, West Virginia submitted a plan to Region 3 that focused on specific emissions from West Virginia, modeled contributions to receptors from those West-Virginia-derived emissions, evaluated West Virginia's existing state law, parsed West-Virginia-specific emission sources, and wrestled with West-Virginia-specific flexibilities (like downwind air contexts). If this action is nevertheless "national," then it would be hard to imagine any SIP disapproval that could ever be challenged outside the D.C. Circuit.

\* \* \* \*

Taken together, all parts of the venue statute point toward the same result—this action should remain in the Fourth Circuit.

## II.   The Court should not dismiss this challenge because EPA has forfeited any argument for dismissal.

A few times, EPA suggests that the Court should dismiss the petition (rather than transfer it) if it finds that venue is improper here. *See*, *e.g.*, ECF No. 10 at 24. But EPA never argues that Section 7607(b)(1) is jurisdictional, justifying dismissal. *Id.* at 14 n.7. At most, the agency makes a passing shot at that argument in a footnote, but a party forfeits footnote arguments. *See Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 250 n.8 (4th Cir. 2015). Beyond

that, EPA did not point to any clear statement rendering this venue statute jurisdictional. *See Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013); *see also Tex. Mun. Power*, 89 F.3d at 867 (characterizing Section 307(b)(1) as a non-jurisdictional venue provision). And in the lone case EPA cites, the D.C. Circuit dismissed the petitions because the same petitioners had filed in the Ninth Circuit; dismissal thus "enable[ed] [the] Ninth Circuit action to proceed." *Chevron*, 45 F.4th at 388. EPA thus offers no reason to dismiss even if venue is somehow improper. And regardless, it is not.

## CONCLUSION

For these reasons, the Court should deny EPA's motion to transfer or dismiss.

Respectfully submitted,

PATRICK MORRISEY
    ATTORNEY GENERAL

Lindsay S. See
    *Solicitor General*

/s/ Michael R. Williams
Michael R. Williams
    *Senior Deputy Solicitor General*

OFFICE OF THE ATTORNEY
GENERAL OF WEST VIRGINIA
State Capitol Complex
Building 1, Room E-26
Charleston, WV 25301
(304) 558-2021

Dated: May 16, 2023                     *Counsel for Petitioner*
                                        *State of West Virginia*

## CERTIFICATE OF COMPLIANCE

1.    This opposition complies with Fed. R. App. P. 27(d)(2)(A) because it contains 5,169 words.

2.    This response brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), as required by Fed. R. App. 27(d)(1)(E), because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point CenturyExpd BT font.

/s/ Michael R. Williams
Michael R. Williams