No. 23-1418

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

STATE OF WEST VIRGINIA,

*Movant*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al.,

*Respondents*.

———————————

PETITION FOR REVIEW OF A FINAL AGENCY ACTION OF THE UNITED
STATES ENVIRONMENTAL PROTECTION AGENCY

———————————

**RESPONDENTS' OPPOSITION TO PETITIONER'S
MOTION TO STAY FINAL AGENCY RULE**

———————————

TODD KIM
   *Assistant Attorney General*

AMANDA V. LINEBERRY
ALEXANDRA L. ST. ROMAIN
ALEX J. HARDEE

*Of Counsel*:
ROSEMARY HAMBRIGHT KABAN
DANIEL P. SCHRAMM
   *Office of the General Counsel*
   *U.S. Environmental Protection*
     *Agency*
   *Washington, D.C.*

   *U.S. Department of Justice*
   *Environment and Natural Resources*
     *Division*
   *P.O. Box 7611*
   *Washington D.C. 20044-7611*

## TABLE OF CONTENTS

INTRODUCTION ............................................................................1

BACKGROUND ...........................................................................2

   I.    Statutory Background .........................................................2

   II.   Factual Background ...........................................................3

      A.    Implementation of the Good Neighbor Provision .................................3

      B.    The 2015 Ozone NAAQS and Movant's Good Neighbor Submission 5

      C.    EPA's Disapproval of Movant's Submission ......................................7

      D.    EPA's Good Neighbor Plan .............................................9

   III.   Procedural Background ....................................................10

ARGUMENT ............................................................................10

   I.    The Motion Should Be Denied On Venue Grounds Or Transferred To The D.C. Circuit. ...........................................................10

   II.   Movant Is Unlikely To Succeed On The Merits. ..................................11

      A.    EPA Acted Within Its Statutory Oversight Role. .............................13

      B.    EPA Reasonably Determined Movant's Submission Failed to Comply with the Good Neighbor Provision. ....................................................15

   III.   Movant Has Not Shown Irreparable Harm Absent A Stay. .....................20

   IV.   The Balance Of Equities And Public Interest Disfavor A Stay. .............22

CONCLUSION ...........................................................................24

CERTIFICATE OF COMPLIANCE ........................................................25

CERTIFICATE OF SERVICE ............................................................25

# TABLE OF AUTHORITIES

## CASES

*Appalachian Power Co. v. EPA*,
    249 F.3d 1032 (D.C. Cir. 2001) ............................................................14

*Arizona ex rel. Darwin v. EPA*,
    815 F.3d 519 (9th Cir. 2016) ...............................................................14

*Ass'n of Irritated Residents v. EPA*,
    686 F.3d 668 (9th Cir. 2012) ...............................................................14

*Beame v. Friends of the Earth*,
    434 U.S. 1310 (1977) ...........................................................................20

*Catawba Cnty., N.C. v. EPA*,
    571 F.3d 20 (D.C. Cir. 2009) ...............................................................12

*Env't Integrity Project v. EPA*,
    425 F.3d 992 (D.C. Cir. 2005) .............................................................18

*EPA v. EME Homer City Generation, L.P.*,
    572 U.S. 489 (2014) ....................................... 4, 5, 6, 15, 19, 20, 23, 24

*Gen. Motors Corp. v. United States*,
    496 U.S. 530 (1990) .............................................................................2

*Genon Rema LLC v. EPA*,
    722 F.3d 513 (3d Cir. 2013) .................................................................14

*Long Island Care at Home, Ltd. v. Coke*,
    551 U.S. 158 (2007) .............................................................................18

*Midwest Ozone Grp. v. EPA*,
    61 F.4th 187 (D.C. Cir. 2023) ................................................... 5, 9, 10

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ...............................................................................12

*Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*,
    915 F.3d 197 (4th Cir. 2019) ....................................................... 20, 21

*New York v. EPA*,
    964 F.3d 1214 (D.C. Cir. 2020) ...........................................................17

*Nken v. Holder*,
    556 U.S. 418 (2009) ...........................................................................10

*North Dakota v. EPA*,
    730 F.3d 750 (8th Cir. 2013) ...................................................... 13, 20

*Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*,
    760 F.2d 312 (D.C. Cir. 1985) ...........................................................11

*Ohio Valley Env't Coal. v. Aracoma Coal Co.*,
    556 F.3d 177 (4th Cir. 2009) ..............................................................12

*Oklahoma v. EPA*,
    723 F.3d 1201 (10th Cir. 2013) .................................................. 14, 19

*Ruckelshaus v. Monsanto Co.*,
    463 U.S. 1315 (1983) .........................................................................20

*Sierra Club v. Ga. Power Co.*,
    443 F.3d 1346 (11th Cir. 2006) .........................................................19

*Sierra Club v. EPA*,
    671 F.3d 955 (9th Cir. 2012) ..............................................................18

*Solite Corp. v. EPA*,
    952 F.2d 473 (D.C. Cir. 1991) ...........................................................18

*State of Wisconsin v. EPA*,
    938 F.3d 303 (D.C. Cir. 2019) ........................................... 3, 4, 5, 7, 8, 10, 18, 24

*Train v. NRDC*,
    421 U.S. 60 (1975) .............................................................................13

iii

*Westar Energy, Inc. v. EPA*,
   608 F. App'x 1 (D.C. Cir. 2015) ............................................................5

*Winter v. NRDC*,
   555 U.S. 7 (2008) ............................................................................23

**STATUTES**

42 U.S.C. § 7401(b)(1) ............................................................................2

42 U.S.C. §§ 7407-09 ............................................................................2

42 U.S.C. § 7410 .......................................................................... 14, 15, 18

42 U.S.C. § 7410(a) ............................................................................3

42 U.S.C. § 7410(a)(1) ............................................................................5

42 U.S.C. § 7410(a)(2) ............................................................................14

42 U.S.C. § 7410(a)(2)(D) ............................................................................5

42 U.S.C. § 7410(a)(2)(D)(i) ............................................................................5

42 U.S.C. § 7410(a)(2)(D)(i)(I) ............................................ 1, 3, 4, 5, 13, 14, 15, 18

42 U.S.C. § 7410(c)(1) .......................................................................... 3, 9, 20

42 U.S.C. § 7410(k) ............................................................................14

42 U.S.C. § 7410(k)(3) .......................................................................... 3, 5, 13

42 U.S.C. § 7410(k)(5) ............................................................................19

42 U.S.C. § 7426 .......................................................................... 15, 17

42 U.S.C. § 7426(b)-(c) .......................................................................... 14, 15

42 U.S.C. §§ 7501-15 ............................................................................3

42 U.S.C. § 7511(a)(1) ...........................................................................5

42 U.S.C. § 7604(a)(2) .........................................................................19

42 U.S.C. § 7607(b)(1) ...................................................................... 1, 11

42 U.S.C. § 7607(d)(1) .........................................................................12

42 U.S.C. § 7607(d)(9) .........................................................................12

## REGULATIONS

80 Fed. Reg. 65292 (Oct. 26, 2015) ......................................................5

81 Fed. Reg. 74504 (Oct. 26, 2016) ......................................................7

87 Fed. Reg. 9516 (Feb. 22, 2022) ............................................... 8, 9, 16

88 Fed. Reg. 9336 (Feb. 13, 2023) ....................... 1, 3, 5, 7, 8, 9, 10, 11, 13, 15-21

88 Fed. Reg. 36654 (June 5, 2023) ........................................................9

## LEGISLATIVE HISTORY

S. Rep. No. 101-228 (1989) ..................................................................3

# INTRODUCTION

The Clean Air Act's ("Act") "Good Neighbor Provision," 42 U.S.C. § 7410(a)(2)(D)(i)(I), requires states to prohibit emissions that significantly contribute to other states' air quality problems. In 2015, EPA revised the national ambient air quality standards ("NAAQS") for ozone, which required states to prepare plans to meet Good Neighbor requirements. Several states, including West Virginia, submitted plans proposing *no* new emissions reductions to address significant contributions to downwind states. EPA disapproved West Virginia's and 20 other states' submissions for not meeting Good Neighbor obligations. 88 Fed. Reg. 9336, 9338 (Feb. 13, 2023) ("Disapproval") (Ex. 1).

The State of West Virginia ("West Virginia" or "Movant") asks this Court to stay the Disapproval. The Court should deny Movant's request.

To start, Movant requests a stay in the wrong court. Because the Act requires Movant to challenge the Disapproval in the D.C. Circuit, in part to avoid potential for conflicting rulings regarding nationwide issues, the Motion should be denied for improper venue. 42 U.S.C. § 7607(b)(1).

A stay is unwarranted. First, Movant's challenge on the merits is unlikely to succeed because the Disapproval is well-founded, clearly consistent with the Act, and well-supported by the administrative record. Movant's SIP submission erroneously called for *no* new emissions controls, despite being linked to four

downwind receptors under its own analysis, and it failed to adequately evaluate readily available emissions control opportunities.

Second, Movant has shown no irreparable harm from the Disapproval, which requires *nothing* from Movant. Instead, Movant alleges it will be injured by a separately promulgated federal plan, but its allegations are speculative, exaggerated, and misplaced.

Third, the equities and public interest disfavor a stay. Movant's assertions that the plan will result in unreliable and costly electricity are unfounded, and a stay would hamstring EPA's ability to address Movant's emissions during litigation, leaving those downwind to suffer worse air quality and increased regulatory obligations.

## BACKGROUND

### I. Statutory Background

The Act seeks "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare," 42 U.S.C. § 7401(b)(1), and to control air pollution through a system of shared federal and state responsibility, *see Gen. Motors Corp. v. United States*, 496 U.S. 530, 532 (1990). It directs EPA to establish and periodically revise NAAQS to limit the concentration of certain pollutants in the ambient air, and to designate areas failing to attain them. 42 U.S.C. §§ 7407-09. Areas designated "nonattainment" are

subject to attainment deadlines; failure to meet those deadlines leads to reclassification and increasingly stringent emissions-reduction requirements. *Id.* §§ 7501-15.

Each time EPA sets a NAAQS, states must submit state implementation plans ("SIPs") to implement and enforce that NAAQS. *Id.* § 7410(a). Among other things, SIPs must contain "adequate provisions prohibiting" emissions that "will contribute significantly to nonattainment in, or interfere with maintenance," of the NAAQS in "any other State." *Id.* § 7410(a)(2)(D)(i)(I). Courts have consistently upheld EPA's interpretation of this prohibition as requiring a factual inquiry into projected air quality and emissions in a future year. *State of Wisconsin v. EPA*, 938 F.3d 303, 321-22 (D.C. Cir. 2019).

The Act requires EPA to review states' submissions for compliance with the Act. 42 U.S.C. § 7410(k)(3). If EPA disapproves a SIP, it must promulgate a federal implementation plan ("FIP"). *Id.* § 7410(c)(1). States may replace a FIP with an EPA-approved SIP. Disapproval at 9362.

## II.     Factual Background

### A.     Implementation of the Good Neighbor Provision

At ground level, ozone is a pollutant formed by the interaction of hydrocarbons, nitrogen oxides, and sunlight. S. Rep. No. 101-228, at 6 (1989). It is "fatal at high concentrations," while lower concentrations can cause adverse health

3

effects like chest pain, shortness of breath, and increased susceptibility to respiratory infections. *Id.* Ozone and its precursors travel great distances and upwind emissions restrict many states' abilities to attain and maintain healthy air quality. *EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489, 496-97 (2014). The Good Neighbor Provision requires upwind states to eliminate significant contributions to downwind states' air quality problems so those downwind do not bear the compliance burden alone. *Wisconsin*, 938 F.3d at 314.

EPA developed a four-step framework to implement the Good Neighbor Provision, which gives meaning to each critical term in the statute. 42 U.S.C. § 7410(a)(2)(D)(i)(I); Response to Comments ("RTC") at 431, Ex. 2. Under this framework, a regulator:

(1) identifies downwind "nonattainment" and "maintenance" receptors (monitoring sites that "will" not attain or struggle to maintain the NAAQS in a future year);

(2) determines if upwind-state emissions "contribute" to those receptors, applying a screening threshold (historically, 1 percent of the NAAQS);

(3) evaluates whether the "amount[]" of contribution is "significant[]" or "interfere[s]" with maintenance through a multifactor analysis, including cost-effectiveness; and

4

(4) ensures the plan "contain[s] adequate provisions" "prohibiting" those

emissions.

42 U.S.C. § 7410(a)(2)(D); *see also Wisconsin*, 938 F.3d at 310-11.

EPA has applied this general framework for decades. *See, e.g.*, Disapproval

at 9338, 9361 n.246. Courts, including the Supreme Court, have consistently

upheld it as "permissible, workable, and equitable." *EME Homer*, 572 U.S. at 524;

*see also Midwest Ozone Grp. v. EPA*, 61 F.4th 187, 189 n.1 (D.C. Cir. 2023);

*Westar Energy, Inc. v. EPA*, 608 F. App'x 1, 3-4 (D.C. Cir. 2015).

States need not use EPA's framework. But whatever analysis and plan states

develop must meet their statutory obligations to "prohibit[]" in-state emissions that

"contribute significantly" to other states' air quality problems. 42 U.S.C.

§§ 7410(a)(2)(D)(i)(I), (k)(3). EPA applies "a consistent set of policy judgments

across all states" to ensure consistency and equity, but EPA evaluates each plan on

its own merits for compliance with the Act. Disapproval at 9369, 9338-42.

## B.     The 2015 Ozone NAAQS and Movant's Good Neighbor Submission

In 2015, EPA strengthened the ozone NAAQS to 70 parts per billion

("ppb"). 80 Fed. Reg. 65292 (Oct. 26, 2015) ("2015 ozone NAAQS"). This

obligated each state to submit a SIP to meet its Good Neighbor obligations "as

expeditiously as practicable." 42 U.S.C. §§ 7410(a)(1), (a)(2)(D)(i), 7511(a)(1); *see

also Wisconsin*, 938 F.3d at 313-20.

5

"[N]othing in the statute" requires EPA "to provide specific metrics to States before they undertake to fulfill their good neighbor obligations." *EME Homer*, 572 U.S. at 510. Nonetheless, in 2018, EPA issued three memoranda providing modeling projections and information to help states develop their plans. Relevant here, the March Memorandum included EPA's modeling projections of ozone levels and contributions in 2023 based on 2011 data ("2011-based modeling"). Ex. 3 at 3, Attachment B (potential receptors), Attachment C (contributions). The March Memorandum also included stakeholder-provided ideas of potential ways to address Good Neighbor obligations; EPA did not endorse those but invited feedback on them. *Id.*, Attachment A at A-1.

Movant submitted its SIP on February 4, 2019, which generally followed EPA's four-step framework. Ex. 4 ("Submission"). At Steps 1 and 2, Movant used modeling prepared by Alpine Geophysics, which showed Movant would contribute more than 0.70 ppb (1 percent of the NAAQS) to ozone levels at one nonattainment receptor and three maintenance receptors in 2023. *Id.* at 21-23.

At Step 3, Movant tried to minimize the significance of its contributions to these receptors. First, it concluded from wind back trajectories that, on most days when ozone levels at the linked receptors exceeded the NAAQS from 2015 to 2017, that air did not come from or pass through West Virginia. *Id.* at 14-17. Second, Movant claimed the linked receptors' high ozone levels were due largely

6

to local and mobile emissions given their proximity to major cities and Interstate 95. *Id.* at 17-20. Movant also claimed its sources were adequately controlled already because some are federally regulated, some are subject to existing state permitting programs, some are subject to EPA's Good Neighbor FIP for the less protective 2008 ozone NAAQS of 75 ppb (the Cross-State Air Pollution Rule ("CSAPR") Update, 81 Fed. Reg. 74505 (Oct. 26, 2016)), and others had or would shut down in the future. Submission at 23-32. At Step 4, Movant concluded it did not need to do anything to satisfy its Good Neighbor obligations for the 2015 ozone NAAQS. *Id.* at 50.

EPA's assessment of Movant's and other states' Good Neighbor SIPs for the 2015 NAAQS was delayed while it addressed the remand of the CSAPR Update in *Wisconsin*, 938 F.3d at 336. Disapproval at 9365. During that time, EPA updated its modeling projections for 2023 from a 2011-based platform to a 2016-based platform through a multi-year collaboration with states, including Movant, and air agencies. *See id.* at 9345, 9339; Ex. 5 at 23-24, 54 (technical document adjusting emissions inventories in response to Movant's input). The 2016-based modeling followed the same approach as the 2011-based modeling but incorporated updated emissions and new meteorological data. Disapproval at 9339-50. The 2016-based modeling is "state-of-the-science" for projecting ozone in 2023. *Id.* at 9366.

C.    **EPA's Disapproval of Movant's Submission**

7

EPA evaluated Movant's Submission on its own merits and determined it did not comply with the Act. *Id.* at 9360. For Steps 1 and 2, EPA accepted that Movant's modeling, like EPA's 2016-based modeling, showed Movant was linked to downwind receptors at Step 2. 87 Fed. Reg. 9516, 9525 (Feb. 22, 2022) ("Proposal").

EPA found Movant did not conduct an adequate Step 3 analysis. Disapproval at 9360. EPA explained that Movant's examination of back trajectories and mobile emissions was technically and legally flawed. The back trajectories only confirmed Movant is upwind of receptors. *Id.*; Proposal at 9526. EPA also described how Movant's local and mobile emissions arguments were legally flawed because the Good Neighbor provision is a contribution standard, not a but-for causation standard. *Id.*; Disapproval at 9377-78 (citing *Wisconsin*, 938 F.3d at 323-24). EPA then explained that the 2016v2 modeling accounted for emissions reductions from retirements Movant identified and showed Movant was still contributing to downwind ozone problems at Step 2. Proposal at 9529.

EPA also explained it was unreasonable for Movant to rely on measures from the CSAPR Update, a FIP for the less protective 2008 ozone NAAQS of 75 ppb, to argue there were no cost-effective control measures available to Movant for the more protective 2015 ozone NAAQS of 70 ppb. Proposal at 9530. First, because the 2015 ozone NAAQS is more protective than the 2008 ozone NAAQS,

it was reasonable to expect control measures or strategies addressing the 2015 ozone NAAQS to reflect higher marginal control costs. *Id.* at 9531. Second, the CSAPR Update FIP was remanded to EPA in *Wisconsin*, and on remand EPA found additional cost-effective control opportunities in West Virginia.[1] Proposal at 9532; Disapproval at 9360. Further, states cannot rely on non-SIP requirements to satisfy SIP requirements, and Movant did not include its current CSAPR FIP requirements—or *any* other controls—as enforceable parts of its Submission. Proposal at 9531; Disapproval at 9360.

At Step 4, EPA explained that Movant's decision to include no permanent and enforceable emissions controls was unsupportable. *Id.* EPA thus disapproved Movant's Submission. *Id.*

### D.     EPA's Good Neighbor Plan

The Disapproval triggered EPA's duty to promulgate a federal plan. 42 U.S.C. § 7410(c)(1). EPA promulgated an integrated set of Good Neighbor requirements for 23 states on March 15, 2023. 88 Fed. Reg. 36654 (June 5, 2023) ("Federal Plan"); Declaration of Rona Birnbaum ("Birnbaum Decl.") ¶ 7, Ex. 6. The Federal Plan requires Movant's power plants to participate in an emissions trading program based on cost-effective control strategies nearly identical to Good

---

[1] The D.C. Circuit dismissed the challenge to the current West Virginia CSAPR FIP for the 2008 ozone NAAQS. *Midwest Ozone Grp.*, 61 F.4th at 190-93.

Neighbor rules recently upheld in *Wisconsin*, 938 F.3d at 320-36, and *Midwest Ozone Grp.*, 61 F.4th at 188-89, 193. Birnbaum Decl. ¶¶ 9, 47-51. When the Federal Plan becomes effective on August 4, 2023, Movant's power plants will begin participating in the trading program for the rest of the ozone season, which ends September 30, 2023. *Id.* ¶¶ 70-77.

## III.    Procedural Background

Many states and parties have challenged the Disapproval.[2] Movant challenged the Disapproval here on April 14, 2023. Dkt. 3-1. EPA moved to transfer or dismiss this petition for lack of venue on April 27, 2023. Dkt. 10. Venue is proper only in the D.C. Circuit. *See* Dkt. 15. Over three months after filing its petition, Movant now seeks to stay the Disapproval. Dkt. 23-1 ("Mot.").

**ARGUMENT**

The Motion should be denied. All four stay factors—(1) strong likelihood of success on the merits, (2) irreparable injury to Movant absent a stay, (3) substantial injury to other parties interested in the proceeding, and (4) the public interest, *Nken v. Holder*, 556 U.S. 418, 433 (2009)—weigh against a stay.

## I.    The Motion Should Be Denied On Venue Grounds Or Transferred To The D.C. Circuit.

---

[2]    *See* Dkt. 10 n.4.

Preliminarily, Movant challenges the Disapproval in the wrong court. As explained in EPA's venue motion, Dkt. 10, the D.C. Circuit is the exclusive venue for review of any final action under the Act that is either "nationally applicable" or "based on a determination of nationwide scope or effect" made and published by EPA. 42 U.S.C. § 7607(b)(1). Because the Disapproval is one or the other, Dkt. 10 at 10-19, the Petition must be heard in the D.C. Circuit. EPA respectfully requests the Court first determine venue and defer consideration of the Motion, because venue is "inextricably bound up with the remedial decision" of whether to issue a stay. *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 760 F.2d 312, 315 (D.C. Cir. 1985) (quotation omitted). Consistent with 42 U.S.C. § 7607(b)(1), this Court should transfer the Petition and Motion to the D.C. Circuit or dismiss them for improper venue.[3]

## II.   Movant Is Unlikely To Succeed On The Merits.

---

[3]   Movant recently informed this Court of a Sixth Circuit order denying EPA's motion to transfer a similar petition to the D.C. Circuit. ECF No. 28-1 (citing *Kentucky v. EPA*, No. 23-3216/3225, Dkt. 39-2 (6th Cir. Jul. 25, 2023)). This Court should follow the non-binding order's more persuasive dissent by Judge Cole. Judge Cole explained the case should be transferred because EPA's Disapproval is based on a published determination of nationwide scope or effect. *Id.* at 10. EPA applied "common, nationwide analytical methods" and "set national benchmarks . . . that looked beyond state boundaries due to the nature of air quality issues." *Id.* at 16. Reading 42 U.S.C. § 7607(b)(1) any other way would be inconsistent with its text. *Id.* at 17-18.

This Court reviews EPA SIP actions under the Administrative Procedure Act's ("APA") "highly deferential" standard of review. *Ohio Valley Env't Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009) (citation omitted).[4] To prevail, Movant must show the Disapproval is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* (citation omitted). This Court applies this deferential review standard "with a presumption in favor of finding the agency action valid." *Id.* This Court must uphold the Disapproval so long as EPA "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citation omitted). Courts are "at [their] most deferential" when "an agency is called upon to make complex predictions within its area of special expertise." *Ohio Valley*, 556 F.3d at 205.

Movant fails to demonstrate the Disapproval is unlawful. Movant paints an inaccurate picture of the Act's cooperative-federalism framework and EPA's action. Movant argues EPA improperly delayed final action and moved the "goalposts." But there has been no change in EPA policy, and Movant's Submission was deficient on its own terms because its explanations for why its

---

[4]    The Disapproval is not reviewed under the Act's standard of review provision. 42 U.S.C. § 7607(d)(1), (9). However, the APA standard is the same. *Catawba Cnty., N.C. v. EPA*, 571 F.3d 20, 41 (D.C. Cir. 2009).

emissions are insignificant did not pass muster. The Act requires EPA to approve only those submissions that meet the Act's requirements. Because Movant's Submission did not, EPA properly disapproved it.

### A.    EPA Acted Within Its Statutory Oversight Role.

1.    SIPs must comply with the Good Neighbor Provision. 42 U.S.C. § 7410(a)(2)(D)(i)(I). EPA may approve a SIP only "*if* it meets all of the [Act's] applicable requirements." *Id.* § 7410(k)(3) (emphasis added). The relevant text requires a SIP to contain "adequate provisions" to eliminate "significant[]" contributions. *Id.* § 7410(a)(2)(D)(i)(I). Movant inaccurately portrays EPA's Disapproval as rejecting West Virginia's approach in favor of its own.  But EPA disapproved it because the record did not support Movant's conclusion that it did not significantly contribute to downwind ozone problems. Movant's *own* modeling found it contributed to downwind receptors, but the Submission did not demonstrate those contributions were insignificant. *See* Background II.B. EPA fulfilled its statutory obligation by disapproving the inadequate Submission.

EPA "is left with more than the ministerial task of routinely approving SIP submissions."  *North Dakota v. EPA*, 730 F.3d 750, 760-61 (8th Cir. 2013); *see also Train v. NRDC*, 421 U.S. 60, 86-88 (1975); RTC at 424-32. Movant argues the statute's cooperative-federalism structure mandates EPA defer to its Submission. But within the Act's cooperative-federalism structure, courts have

routinely approved EPA's rejections of legally and technically flawed analyses. *See, e.g.*, *Oklahoma v. EPA*, 723 F.3d 1201, 1212-13 & n.7 (10th Cir. 2013); *Arizona ex rel. Darwin v. EPA*, 815 F.3d 519, 531 (9th Cir. 2016). While states enjoy wide discretion in *formulating* SIPs, the Act vests EPA with the authority to determine whether a submission "include[s] enforceable emission limitations and other control measures, means, or techniques . . . as may be necessary or appropriate to meet the applicable requirements" of the Act. 42 U.S.C. § 7410(a)(2)); *see also id.* § 7410(k). These determinations require independent evaluation, statutory interpretation, and supplemental technical analyses by EPA as the expert agency. *See Ass'n of Irritated Residents v. EPA*, 686 F.3d 668, 677 (9th Cir. 2012) (highlighting EPA's "affirmative duty" to ensure SIPs demonstrate attainment).

This is especially true in the context of interstate pollution. EPA's substantive review authority under § 7410 is consistent with its authority under § 7426(b)-(c), which authorize EPA to impose federal requirements whenever downwind jurisdictions demonstrate Good Neighbor violations. In those provisions, Congress empowered EPA to apply the substantive standard in § 7410(a)(2)(D)(i)(I) independent of SIP processes under § 7410(k), *see Genon Rema LLC v. EPA*, 722 F.3d 513, 520-24 (3d Cir. 2013), though the standards are identical, *see Appalachian Power Co. v. EPA*, 249 F.3d 1032, 1045-47 (D.C. Cir.

14

2001) (upholding EPA's interpretation of § 7410(a)(2)(D)(i)(I) as a "functional prohibition" on emissions that "EPA may deploy either singly or in tandem" with § 7426). Congress would not have granted EPA such authority in response to downwind jurisdictions' petitions under § 7426(b)-(c) while affording EPA only a ministerial role when reviewing upwind states' SIPs under § 7410.

2.    For the 2015 ozone NAAQS, EPA reviewed state submissions and made reasonable determinations, consistent with the statute, applicable caselaw, and its substantial expertise in addressing the "complex problem" of interstate air pollution. *EME Homer*, 572 U.S. at 495; Disapproval at 9340. Movant attempts to recast EPA's principled review as a "never-before-seen presumption of uniformity" and cites a non-binding Fifth Circuit order to distort EPA's evaluations. Mot. at 14-16 (quoting Unpublished Order, *Texas v. EPA*, No. 60069, Dkt. 269-2 (5th Cir. May 1, 2023)). But EPA's "uniform" approach to Good Neighbor Provision implementation is decades-old, equitable, and reasonable. *EME Homer*, 572 U.S. at 514-15, 518, 524; Disapproval at 9337-38. And Movant itself relied on it. More importantly, EPA did not disapprove any SIP for failing to strictly comply with the four-step framework. *Id.* at 9354, 9366. As shown below, EPA disapproved Movant's Submission because of its own inadequacies.

**B.    EPA Reasonably Determined Movant's Submission Failed to Comply with the Good Neighbor Provision.**

EPA disapproved Movant's Submission because, regardless of EPA's updated modeling, it failed to show that West Virginia's emissions that "contribute" to downwind ozone problems are not "significant." In its Motion, Movant does not contest that wholly sufficient basis for EPA's Disapproval at all. The Disapproval complies with well-settled principles of administrative law and is grounded in the statute's requirements.

1.      EPA did not move the goalposts. Movant's arguments mischaracterize the basis for the Disapproval and EPA's use of modeling. EPA did not disapprove Movant's submission because it did not rely on EPA's 2016-based modeling. Under the Alpine modeling on which Movant relied, Movant is contributing to downwind ozone problems. Proposal at 9523, 9525; Disapproval at 9360. This is merely confirmed by EPA's 2016-based modeling. *Id.* EPA disapproved the submission because Movant did not support the conclusion that its downwind contributions to linked receptors were insignificant. *Id.* As discussed in Background II.C., *supra*, EPA considered and reasonably rejected each of Movant's explanations. *See* Proposal at 9526-29; Disapproval at 9360.

EPA found Movant failed to support its conclusion that cited power plant retirements resolved its downwind contributions. *Id.*; Proposal at 9529. EPA explained that evaluating the air quality benefits from plant retirements requires an analysis of the *net* effects of those retirements on overall emissions. *Id.* Plant

retirements do not automatically result in equivalent emissions reductions because other sources increase generation or new plants are built to meet demand, so it was unreasonable for Movant not to analyze the net emissions effects of its listed retirements. *Id.* In the absence of analysis in the Submission to support Movant's claims, EPA reasonably relied on the 2016-based modeling to support its conclusion that the retirements—which were not reflected in the Alpine or 2011-based modeling but were reflected in the 2016-based modeling—did not resolve Movant's downwind contributions. *Id.*; Disapproval at 9360. EPA did not require Movant to respond to updated modeling, *contra* Mot. 17-18, but it did independently review Movant's claims.

Movant's reliance on *New York v. EPA*, 964 F.3d 1214, 1223 (D.C. Cir. 2020), is misplaced. Mot. at 18. *New York* concerned EPA's denial of a petition from New York under 42 U.S.C. § 7426 to compel EPA to regulate upwind sources for failing to eliminate their significant contributions. When New York challenged that denial, the D.C. Circuit held it was "impossible to discern" what EPA's bases were because its "explanation kept shifting." *New York*, 964 F.3d at 1222. That is what the D.C. Circuit meant by "moving the finish line." *Id.* at 1223. Here, EPA is not changing the rules. It is merely requiring Movant to substantiate its assertion that retirements eliminate significant contributions downwind, as required by the Good Neighbor provision. Movant did not.

17

2.      In any event, nothing in the Act prohibits EPA from using the most accurate, up-to-date data to evaluate Good Neighbor obligations, which address pollution that "will" impact downwind states. 42 U.S.C. § 7410(a)(2)(D)(i)(I). Because the Good Neighbor provision focuses on future air quality conditions and contribution levels, it would be "anomalous" to use air quality data arrested as of a SIP deadline under § 7410. Disapproval at 9366 (citing *Wisconsin*, 938 F.3d at 321-22). EPA's reliance on the most accurate data upholds, rather than undermines, its duty to act reasonably, and reliance on outdated data may risk arbitrariness. *Cf. Sierra Club v. EPA*, 671 F.3d 955, 967-68 (9th Cir. 2012).

Further, EPA committed no error by updating its 2016-based modeling with new data inputs between its proposed and final action. *See Solite Corp. v. EPA*, 952 F.2d 473, 485 (D.C. Cir. 1991) (allowing parties to criticize methodology and using updated data to confirm prior assessments met notice-and-comment requirements). Movant could and did comment on EPA's 2016-based modeling. *See* RTC at 59; *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 170-71 (2007) (holding that an ability to comment in rulemaking was "unlikely" to create "unfair surprise"). EPA's use of updated modeling was not a "surprise" and certainly did not "deprive[] the State of the opportunity and ability," Mot. at 18, to submit an Act-compliant SIP, *cf. Env't Integrity Project v. EPA*, 425 F.3d 992, 996

(D.C. Cir. 2005). The 2016v3 modeling merely confirmed what Movant's chosen Alpine modeling showed: Movant is linked. Disapproval at 9339, 9343; RTC at 59.

3. Movant takes issue with the fact that EPA's 2016-based modeling post-dates its statutory deadline to act on its Submission, Mot. at 19, but its allegations are irrelevant to the merits of the Disapproval since both EPA's and Movant's modeling establish Movant is linked at Step 2. And the Act provides one remedy for EPA's failure to satisfy a nondiscretionary duty by a certain date: a court-ordered deadline to address the obligation. 42 U.S.C. § 7604(a)(2); *see also Oklahoma*, 723 F.3d at 1223-24.

EPA was not required to issue a SIP call. *Contra* Mot. at 19. Under 42 U.S.C. § 7410(k)(5), EPA may initiate a SIP call—requiring a state to revise an already approved SIP—if it finds the approved SIP is "substantially inadequate." The Act does not authorize EPA to issue a SIP call rather than act on a pending submission. *Sierra Club v. Ga. Power Co.*, 443 F.3d 1346, 1354-55 (11th Cir. 2006) (discussing 42 U.S.C. § 7410(k)(5)); *see also* RTC at 395-98; Disapproval at 9363-64 (citing *EME Homer*, 572 U.S. at 510). And, as explained above, requiring EPA to only consider outdated data risks arbitrariness and undermines EPA's duty to act reasonably. *See* Argument II.B., *supra*.[5]

---

[5] Movant also criticizes EPA's efficient promulgation of the Federal Plan. Mot. at 15. When EPA disapproves a SIP, the Act requires EPA to promulgate a FIP "at

Here, EPA reasonably disapproved Movant's SIP. Movant has failed to show a strong likelihood of success on the merits.

## III.    Movant Has Not Shown Irreparable Harm Absent A Stay.

To establish irreparable harm, Movant must "make a 'clear showing' that it will suffer harm that is 'neither remote nor speculative, but actual and imminent.'" *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 216 (4th Cir. 2019) (citation omitted). Movant's allegations about its sovereign interests and permitting resources—both associated with the Federal Plan, not the Disapproval—fail to establish irreparable harm absent a stay.

As an initial matter, Movant's three-month delay in seeking a stay "vitiates much of the force of their allegations of irreparable harm." *Beame v. Friends of the Earth*, 434 U.S. 1310, 1313 (1977); *Ruckelshaus v. Monsanto Co.*, 463 U.S. 1315, 1318 (1983) (delay undermines "claim of urgency and counsels against" granting stay). Its delay is unsurprising because the Disapproval does not require Movant to do *anything* and thus causes no harm. *See* Disapproval at 9364. Movant instead alleges harm associated with the separately promulgated Federal Plan, but these

---

any time within two years." 42 U.S.C. § 7410(c)(1). EPA need not "postpone its [FIP] action even a single day," *EME Homer*, 572 U.S. at 509, and courts have upheld EPA finalizing a SIP disapproval and FIP in one action. *See North Dakota*, 730 F.3d at 758-59.

allegations fail to show any "actual or imminent" harm. *Mountain Valley Pipeline*, 915 F.3d at 216.

First, Movant's allegations that the Federal Plan will harm its sovereign interests, Mot. at 19, are premised on Movant's merits success and fail for the reasons explained in Argument II, *supra*. The Federal Plan preserves flexibility for sources and Movant. Birnbaum Decl. ¶¶ 34, 80. At any time, Movant may replace the Federal Plan with an Act-compliant SIP. Disapproval at 9362.

Second, Movant has no "compliance costs" because the Federal Plan regulates emissions sources rather than states. Movant notes it will review permit applications from "affected facilities who must install costly and complex new emission controls," but rightfully does not claim those costs as its own. Mot. at 21. Movant also fails to show irreparable economic harms from carrying out its regulatory duties in their normal course by performing permit reviews. Movant alleges it will be harmed by diverting "time and resources" to review permit applications to install new emissions controls. *Id.* at 21. But Movant makes no effort to quantify those resources in any detail, making them too "speculative" to constitute economic harm, much less likely irreparable harm. *Mountain Valley Pipeline*, 915 F.3d at 216.

In any event, the Federal Plan's emissions reductions measures are eminently feasible and cost-effective. Birnbaum Decl. ¶¶ 27-29. Power plants in

West Virginia are subject to a modest control strategy under the Federal Plan, which focuses on optimizing the performance of existing and widely available technologies. *Id.* ¶¶ 44-51. The trading program provides power plants flexibility to chart their own compliance pathways if they prefer not to run their existing controls. *Id.* ¶¶ 34-35, 76. Movant's 2023 emissions budget actually reflects a modest increase in allowable emissions compared to its budget under a prior rule, which exceeds its past year's emissions, and it may bank allowances for use in later years, *id.* ¶¶ 69-77. These strategies have been successfully implemented, including by sources in West Virginia, and judicially upheld in recent years. *Id.* ¶ 78.

Movant also misapprehends the Federal Plan's later pollution control requirements. Although Movant contends power companies must act "now" to install pollution controls by 2026, Mot. at 21, these reductions are phased in over 2026-2027, providing an additional year for implementation and through the flexibility of a trading program. Birnbaum Decl. ¶¶ 49, 76-77. These reductions are based on "widely available pollution control technologies" and "fully achievable" without reduced operations or retirements. *Id.* ¶ 34. Pre-installation planning for such controls would "involve no capital costs." *Id.* ¶ 52. Movant has not met its burden of establishing likely irreparable harm from the Disapproval.

**IV.    The Balance Of Equities And Public Interest Disfavor A Stay.**

Movant fails to show "that the balance of equities tips in its favor, and that [a stay] is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008). Movant contends staying the Disapproval will not endanger air quality while claiming denial of a stay will impact the reliability of Movant's electric grid and impose higher electricity costs on Movant's residents. Mot. at 22. Both contentions are ill-founded.

To start, neither the Disapproval nor the Federal Plan will disrupt Movant's grid. After incorporating feedback from power-sector stakeholders on the trading program, EPA found—just as with prior Good Neighbor regulations—it will not "disrupt[] the reliable operation of the bulk power grid," and any effect on retail electricity prices will be negligible. Birnbaum Decl. ¶¶ 39-43, 58-62. As explained above, the Federal Plan's requirements are feasible and cost-effective.

Meanwhile, staying the Disapproval and Federal Plan will harm downwind states. EPA's actions address the complex problem of upwind states' significant contributions to downwind air quality problems. *EME Homer*, 572 U.S. at 497-99. A stay would leave no law on the books to address the downwind impacts of Movant's emissions, delaying EPA's implementation of Congress's mandate that upwind states lower emissions as expeditiously as practicable. Birnbaum Decl. ¶¶ 16, 84-93. Staying the Disapproval as to Movant would be inequitable, impeding downwind states' efforts to attain the 2015 ozone NAAQS while letting

Movant "reap[] the benefits of the economic activity causing the pollution without bearing all the costs." *EME Homer*, 572 U.S. at 495.

Movant is not irreparably harmed by the Disapproval, but its ongoing emissions significantly contribute to harmful ozone pollution, imposing unfair burdens downwind. *See Wisconsin*, 938 F.3d at 314. The balance of harms weighs heavily in favor of protecting the health and welfare of those continuing to suffer from poor air quality.

## CONCLUSION

West Virginia's Motion should be denied.

Respectfully submitted,

OF COUNSEL:

ROSEMARY HAMBRIGHT KABAN
DANIEL P. SCHRAMM
U.S. Environmental Protection
   Agency
Office of General Counsel
Washington, D.C.

TODD KIM
Assistant Attorney General

*/s/ Amanda V. Lineberry*
AMANDA V. LINEBERRY
ALEXANDRA L. ST. ROMAIN
ALEX J. HARDEE
U.S. Department of Justice
Environment & Natural Resources
   Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
(202) 616-5376
amanda.lineberry@usdoj.gov

DATE: August 2, 2023

*Counsel for Respondents*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing Respondents' Opposition to Petitioner's Motion for Stay complies with Fed. R. App. P. 27(d)(2)(A) and 32(f) and (g), as it complies with typeface requirements and contains 5,198 words, excluding exempted portions.

Date: August 2, 2023                          */s/ Amanda V. Lineberry*
                                              AMANDA V. LINEBERRY

                                              *Counsel for Respondents*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Respondents' Opposition to Petitioner's Motion for Stay was filed with the Clerk of the Court using the CM/ECF system, which will send notification of said filing to the attorneys of record, who are required to have registered with the Court's CM/ECF system.

Date: August 2, 2023                          */s/ Amanda V. Lineberry*
                                              AMANDA V. LINEBERRY

                                              *Counsel for Respondents*