NO. 23-1418

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

STATE OF WEST VIRGINIA,

*Petitioner*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY;
MICHAEL S. REGAN, Administrator,
United States Environmental Protection Agency,

*Respondents*.

**BRIEF OF SIERRA CLUB AND APPALACHIAN MOUNTAIN
CLUB AS *AMICI CURIAE* TO PETITIONER'S MOTION TO STAY**

*/s/ Zachary M. Fabish*
Zachary M. Fabish
Sierra Club
50 F St NW, 8th Floor
Washington, DC 20001
650-388-8446
zachary.fabish@sierraclub.org

Joshua D. Smith
Sierra Club
2101 Webster Street, Suite 1300
Oakland, California 94612
415-977-5560
joshua.smith@sierraclub.org

*Counsel for Sierra Club*

*/s/ Seth L. Johnson*
Seth L. Johnson
Kathleen L. Riley
Neil Gormley
Earthjustice
1001 G St. NW, Ste. 1000
Washington, DC 20001
202-797-5245
202-745-5227
202-797-5239
sjohnson@earthjustice.org
kriley@earthjustice.org
ngormley@earthjustice.org

*Counsel for Sierra Club and
Appalachian Mountain Club*

Filed: August 2, 2023

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................i

TABLE OF AUTHORITIES ...............................................ii

DISCLOSURE STATEMENT ..............................................v

CONCISE STATEMENT ..................................................1

BACKGROUND .........................................................2

ARGUMENT ...........................................................6

    I.    Petitioner Is Unlikely to Succeed on the Merits....................6

    II.   Petitioner Fails to Show Irreparable Harm from the
         Disapproval Rule. ...............................................11

    III.  A Stay Would Disserve the Public Interest. .......................13

CONCLUSION .........................................................14

# TABLE OF AUTHORITIES

CASES                                                          PAGE(S)

*ATK Launch Systems, Inc. v. EPA,*
   651 F.3d 1194 (10th Cir. 2011) ............................................................. 10

*Barnhart v. Peabody Coal Co.,*
   537 U.S. 149 (2003) ................................................................................. 7

*Downwinders at Risk, et al. v. Regan,*
   No. 4:21-cv-03551-DMR (N.D. Cal. May 12, 2021) ............................... 7

*EPA v. EME Homer City Generation,*
   572 U.S. 489 (2014) ....................................................................... 3, 5, 8

*Memphis A. Philip Randolph Inst. v. Hargett,*
   977 F.3d 566 (6th Cir. 2020) ................................................................. 13

*Michigan v. EPA,*
   213 F.3d 663 (D.C. Cir. 2000) ................................................................. 8

*S. Ill. Power Coop. v. EPA,*
   863 F.3d 666 (7th Cir. 2017) ................................................................. 10

*W. Va. Chamber of Commerce v. Browner,*
   166 F.3d 336 (4th Cir. 1998) ................................................................. 10

*Wis. Gas Co. v. FERC,*
   758 F.2d 669 (D.C. Cir. 1985) ............................................................... 12

*Wisconsin v. EPA,*
   938 F.3d 303 (D.C. Cir. 2019) ..................................................... 4, 13, 14

STATUTES

42 U.S.C. § 7410(a)(1) ................................................................. 4

42 U.S.C. § 7410(a)(2)(D)(i) ........................................................ 6

42 U.S.C. § 7410(a)(2)(D)(i)(I) ................................................... 4

42 U.S.C. § 7410(c)(1) ............................................................ 4, 14

42 U.S.C. § 7410(k)(3) ................................................................. 4

42 U.S.C. § 7511(a) ................................................................... 14

42 U.S.C. § 7511(b)(1) ............................................................... 14

42 U.S.C. § 7607(b)(1) ................................................................. 9

FEDERAL REGISTER NOTICES

National Ambient Air Quality Standards for Ozone,
    80 Fed. Reg. 65,292 (Oct. 26, 2015) ................................... 3, 4

Additional Air Quality Designation for the 2015 Ozone National Ambient
    Air Quality Standards, 83 Fed. Reg. 25,776 (June 4, 2018) .............. 14

Air Plan Disapprovals; Interstate Transport of Air Pollution for the 2015
    8-Hour Ozone National Ambient Air Quality Standards,
    88 Fed. Reg. 9,336 (Feb. 13, 2023) ........................... 5, 6, 9, 10

Federal "Good Neighbor Plan" for the 2015 Ozone National Ambient Air
    Quality Standards, 88 Fed. Reg. 36,654 (June 5, 2023) ............... 11, 14

OTHER AUTHORITIES

EPA, 8-Hour Ozone (2015) Nonattainment Areas by State/County/Area,
    https://www3.epa.gov/airquality/greenbook/jncty.html ...................... 2

iii

EPA, Data File with 2016v3 Ozone Design Values and Contributions, EPA-HQ-OAR-2021-0663-0070 (posted Feb. 13, 2023) ........................9

EPA, Ground-level Ozone Basics, https://www.epa.gov/ground-level-ozone-pollution/ground-level-ozone-basics .............................................3

EPA, Integrated Science Assessment for Ozone and Related Photochemical Oxidants, (Feb. 2013) (EPA-HQ-OAR-2008-0699-0405) ("Science Assessment") .........................................................................3

EPA, Policy Assessment for the Review of the Ozone NAAQS, (Aug. 2014) (EPA-HQ-OAR-2008-0699-0404) ("Policy Assessment") ......................3

## DISCLOSURE STATEMENT

Non-Governmental Corporate *amici curiae* parties to this Action: Sierra Club and Appalachian Mountain Club.

Parent Corporations: None.

Publicly Held Company that Owns 10% or More of Amici's Stock: None.

Sierra Club's General Nature and Purpose: Sierra Club, a corporation organized and existing under the laws of the State of California, is a national nonprofit organization dedicated to the protection and enjoyment of the environment.

Appalachian Mountain Club's General Nature and Purpose: Appalachian Mountain Club, a nonprofit corporation organized and existing under the laws of the Commonwealth of Massachusetts, is a regional organization dedicated to promoting the protection, enjoyment, and wise use of the mountains, rivers, and trails of the northeast outdoors.

## CONCISE STATEMENT

## Fed. R. App. Proc. 29(a)(4)(D)

Sierra Club and Appalachian Mountain Club (collectively, "Amici") are non-profit organizations dedicated to protecting public health and the environment from harmful pollution, including ozone. Amici's members live, work, and recreate in areas of the country with unhealthy levels of ozone that EPA has determined are caused, in part, by pollution from West Virginia. Amici have worked for years to secure stronger ozone pollution protections, including by engaging in administrative and judicial proceedings surrounding many of EPA's prior "cross-state" ozone regulations.

Amici submit this brief to help demonstrate that a stay is unwarranted. Petitioner's state implementation plan failed to satisfy the Clean Air Act's Good Neighbor Provision. Although EPA demonstrated polluters in West Virginia contribute significant ozone pollution to downwind areas struggling to attain and maintain the ozone standard—and Petitioner's plan concedes the state contributes above the relevant threshold—Petitioner's plan failed to require any emissions reductions. Thus, Petitioner's plan was not approvable.

1

Petitioner further fails to identify irreparable harm from the challenged rule, but a stay would disserve the public interest by undermining the core Clean Air Act requirement of timely attainment of clean air standards.

As nonprofit organizations with members harmed by the pollution from West Virginia at issue in the Disapproval Rule, Amici believe that their perspective will be helpful to the Court.

No party's counsel authored this brief in whole or in part, and no party or party's counsel or other person other than amicus curiae, its members, or its counsel contributed money that was intended to fund preparing or submitting this brief.

## BACKGROUND

Millions of people across this country are subjected to unhealthy levels of ground-level ozone pollution, also called smog.[1] Ground-level ozone is a corrosive air pollutant that inflames the lungs, constricts

---

[1] *See, e.g.*, EPA, 8-Hour Ozone (2015) Nonattainment Areas by State/County/Area,
https://www3.epa.gov/airquality/greenbook/jncty.html.

breathing, and likely kills people.[2] Ozone-induced health problems force people to stay indoors, take medication, and miss work or school.[3] Ground-level ozone is not emitted directly into the air, but forms from precursor air pollution, including nitrogen oxides emitted by sources like cars, power plants, and industrial boilers.[4]

Such air pollution is "heedless of state boundaries" and "often transported … over hundreds of miles, to downwind States." *EPA v. EME Homer City Generation*, 572 U.S. 489, 496 (2014). As a result, upwind States are effectively "relieved of the associated costs," which "are borne instead by the downwind States, whose ability to achieve and maintain satisfactory air quality is hampered by the steady stream of infiltrating pollution." *Id.* Downwind states often find their efforts to timely attain clean air standards hindered by emissions from upwind

---

[2] *See* 80 Fed. Reg. 65,292, 65,308 (Oct. 26, 2015); EPA, Integrated Science Assessment for Ozone and Related Photochemical Oxidants, at 2-20 to -24, tbl.2-2 (Feb. 2013) (EPA-HQ-OAR-2008-0699-0405) ("Science Assessment").
[3] *See, e.g.*, EPA, Policy Assessment for the Review of the Ozone NAAQS, at 3-18, 3-26 to -29, 3-32 to - 35 (Aug. 2014) (EPA-HQ-OAR-2008-0699-0404) ("Policy Assessment"); Science Assessment at 2-16 to -18, 2-20 to -24, tbl.2-2.
[4] EPA, Ground-level Ozone Basics, https://www.epa.gov/ground-level-ozone-pollution/ground-level-ozone-basics.

states. *See, e.g.*, *Wisconsin v. EPA*, 938 F.3d 303, 309 ("on average, over three-quarters of the ground-level ozone in downwind States comes from upwind emissions.").

In 2015, EPA finalized a health-based National Ambient Air Quality Standard ("NAAQS") for ground-level ozone of 70 parts per billion ("ppb"). 80 Fed. Reg. 65,292 (Oct. 26, 2015). This triggered a requirement for states to adopt and submit within three years state implementation plans ("SIPs," or "plans") to EPA that, among other requirements, contained "adequate provisions" to "prohibit[] ... any source or other type of emissions activity within the State from emitting any air pollutant in amounts which will contribute significantly to nonattainment in, or interfere with maintenance by, any other State"— the so-called "Good Neighbor Provision." 42 U.S.C. § 7410(a)(1), 7410(a)(2)(D)(i)(I). Once EPA receives a plan, it must approve or disapprove it based on whether "it meets all of the applicable requirements" of the Clean Air Act, including the Good Neighbor Provision. *Id.* § 7410(k)(3). For states without approved plans, EPA must promulgate a federal plan instead. *Id.* § 7410(c)(1).

Many states, including Petitioner, submitted their Good Neighbor plans late, and in February of this year, EPA relied on a consistent nationwide approach to issue a single rule disapproving (in whole or in part) 21 states' plans, including Petitioner's. 88 Fed. Reg. 9,336 (Feb. 13, 2023) (the "Disapproval Rule"). Based on national air quality modeling and uniform, nationwide analytical and policy judgments designed to ensure an "efficient and equitable" solution to the national problem of cross-state pollution, *id.* at 9,340-81 (citing *Homer City*, 572 U.S. at 519), EPA determined that polluters in numerous states, including West Virginia, contribute to unsafe ozone levels at more than eighty downwind locations. 88 Fed. Reg. at 9,351-2. On the same basis, EPA determined that polluters in West Virginia significantly contribute to unsafe ozone levels at eight downwind locations, *id.* at 9,360 (three nonattainment, one maintenance, and four violating-monitor receptors), yet Petitioner's plan (like all those EPA disapproved) failed to require any emissions reductions. *Id.* at 9,360 (emphasis added).

Petitioner's plan, like the twenty other states' do-nothing SIPs, was not approvable. Nonetheless, on April 14, 2023, Petitioner challenged the Disapproval Rule, and now, over three months later,

5

seeks a stay of that Rule. Petitioner simultaneously seeks a stay of the federal Good Neighbor Plan, published this June, "as applied" to Petitioner, from the D.C. Circuit.[5]

## ARGUMENT

Petitioner has not carried its burden to win a stay.

## I.      Petitioner Is Unlikely to Succeed on the Merits.

Far from demonstrating likelihood of success on the merits, the record demonstrates that EPA was correct in disapproving Petitioner's plan. Petitioner's own modeling supports that it contributes up to 2.52 ppb of ozone to at least four downwind areas. *See* Ex. F-031; Mot. at 6; Ex. M-008; *see also* 88 Fed. Reg. at 9,360. Yet Petitioner's plan failed to require any emissions reductions to "prohibit[]" Petitioners' contributions, as the Act requires. 88 Fed. Reg. at 9,360; 42 U.S.C. § 7410(a)(2)(D)(i). This do-nothing SIP did not satisfy Petitioner's obligations under the Good Neighbor Provision.

Faced with the fact that its SIP was not approvable, Petitioner contends that EPA acted too slowly in disapproving its SIP, and was

---

[5] Stay Motion, *Utah v. EPA*, No. 23-1157, Doc. #2008555 (D.C. Cir. July 19, 2023).

thus precluded from considering data showing West Virginia's impacts on downwind states. This argument fails for multiple reasons.

First, though government agencies are all-too-often late in meeting the Act's deadlines,[6] lateness does not relieve an agency from the obligation to act. *See Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 158 (2003) (courts do not "construe[] a provision that the Government 'shall' act within a specified time, without more, as a jurisdictional limit precluding action later."). Moreover, Petitioner could have brought a deadline suit to compel EPA to act, but didn't. It was Amici (among others) who brought such litigation to compel EPA to approve or disapprove states' plans—including Petitioner's. *See* Complaint, *Downwinders at Risk, et al. v. Regan*, No. 4:21-cv-03551-DMR (N.D. Cal. May 12, 2021). Amici did so because EPA's inaction threatened Amici's members' health and welfare by delaying necessary pollution reductions.

---

[6] Petitioner itself was late in submitting its SIP to EPA in February 2019, and even later when it submitted another SIP revision in June 2019. Mot. Ex. G.

7

Second, nothing in the Act allows EPA, when it acts, to ignore relevant information simply because Petitioner feels that information is too up-to-date or is not provided early enough. *See Homer City*, 572 U.S. at 510 (the Act "does not require EPA to furnish upwind states with information of any kind"); *see also Michigan v. EPA*, 213 F.3d 663, 674 (D.C. Cir. 2000) (upholding EPA's reliance on modeling it made available online six weeks before final rule).[7] Petitioner's approach would all but ensure EPA is forced to act arbitrarily and capriciously. Compelling EPA to ignore current, relevant information—such as data submitted during public comment periods on proposed SIP actions— would result in approvals and disapprovals that are unsupported or contradicted by the record.

Third, it could not have come as a "surprise" that EPA would not reflexively accept the old record data. Indeed, the 2018 memorandum Petitioner relies on explicitly notes that:

_____

[7] Petitioner's sense of *when* exactly Petitioner feels the record should close is selectively enforced or, at best, unclear. Closure can't come by the deadline for SIP submission, for Petitioner submitted late, yet Petitioner also ignored EPA memoranda that predated the SIP submission deadline as "not considered timely." Mot. Ex. M-006-7.

8

> While the information in this memorandum and the associated air quality analysis data could be used to inform the development of these SIPs, **the information is not a final determination** regarding states' obligations under the good neighbor provision. **Any such determination would be made through notice-and-comment rulemaking**.

Mot. Ex. C-002 (emphasis added). Nor is it a "switcheroo"; the 2018 ozone contribution data largely conforms with the Disapproval Rule:

***West Virginia's Contributions to Connecticut Downwind Nonattainment Receptors***

| Site ID | County | EPA 2018 Memo[8] | Disapproval Rule[9] |
|---------|--------|------------------|---------------------|
| 90010017 | Fairfield | 0.68 ppb | 0.79 ppb |
| 90013007 | Fairfield | 1.10 ppb | 1.35 ppb |
| 90019003 | Fairfield | 1.14 ppb | 1.37 ppb |

This data has consistently shown that West Virginia contributes more than 1% of the ozone standard—EPA's threshold for whether states are linked—to areas struggling and failing to attain the standard in Connecticut, yet Petitioner submitted a do-nothing SIP. Petitioner's SIP was not approvable.

---

[8] *See* Mot. Ex. C-016.
[9] *See* 88 Fed. Reg. at 9,351, tbl. III.B-1; EPA, Data File with 2016v3 Ozone Design Values and Contributions, EPA-HQ-OAR-2021-0663-0070 (posted Feb. 13, 2023).

Finally, Petitioner cannot demonstrate a likelihood of success because Petitioner filed in the wrong court. *See* 42 U.S.C. § 7607(b)(1). Applying to 21 states spanning the continental U.S., the Disapproval Rule is nationally applicable on its "face," and the scope of "petitioner's challenge" is irrelevant to venue. *ATK Launch Systems, Inc. v. EPA*, 651 F.3d 1194, 1197 (10th Cir. 2011) (EPA's action designating 31 nonattainment areas, including areas that did not share a "local or regional connection to one another," was nationally applicable); *S. Ill. Power Coop. v. EPA,* 863 F.3d 666 (7th Cir. 2017); *W. Va. Chamber of Commerce v. Browner*, 166 F.3d 336 (4th Cir. 1998) (table) (unpublished). Moreover, even if it were not nationally applicable, EPA reasonably found and published that the rule is "based on a determination of 'nationwide scope or effect,'"—a "common core" of "uniform, nationwide analytical methods, policy judgments, and interpretation." 88 Fed. Reg. at 9,337, 9,372, 9,380-81. For example, EPA rejected as inconsistent with the Good Neighbor Provision Petitioner's—and ten other states'—argument that EPA should alter states' Good Neighbor obligations to reflect international emissions. 88 Fed. Reg. at 9,378. Petitioner itself confirms EPA's action is based on

10

consistent determinations of nationwide scope or effect, claiming (at 10) the action is "largely blind to state-specific facts and circumstances."[10] Venue thus lies only in the D.C. Circuit, where Petitioner has properly filed its challenge to the Good Neighbor Plan, and this Court accordingly should not grant a stay.

## II. Petitioner Fails to Show Irreparable Harm from the Disapproval Rule.

Petitioner makes no argument that the Disapproval Rule—the *only* rule at issue before this Court—causes it any harm, let alone irreparable harm.[11] Instead, Petitioner solely cites supposed harms from the Good Neighbor Plan, 88 Fed. Reg. 36,654 (June 5, 2023). But Petitioner is challenging that rule in the correct court, the D.C. Circuit, and is moreover seeking a stay there along with co-petitioners Ohio and

---

[10] In fact, EPA gave full consideration to states' attempts to demonstrate compliance with the Good Neighbor provision through alternative modeling or approaches. But EPA found those alternatives technically and legally unsupported, *e.g.*, 88 Fed. Reg. at 9,342, and based the final action on nationwide determinations.

[11] Indeed, Petitioner appears to concede that the SIP Disapproval Rule does not cause it harm, since the SIP Disapproval Rule was published February 15, 2023, and effective since March 15, 2023, (88 Fed. Reg. at 9,336), but Petitioner did not bother seeking a stay until July 18, 2023, 155 and 125 days later, respectively.

Indiana. *See* Stay Motion, *Utah v. EPA*, No. 23-1157, Doc. #2008555 (D.C. Cir. July 19, 2023). In fact, Petitioner's declarations supporting both motions are virtually word-for-word identical. *Compare id.* Exs. 3, 4 (Lane and Crowder Declarations "in Support of Petitioners' Motion"), *with* Mot. Exs. L, M (Lane and Crowder Declarations "in Support of Petitioners' [*sic*] Motion"). Because these alleged harms would result, if at all, from the rule Petitioner is challenging in the D.C. Circuit, they cannot sustain this stay request.

That problem aside, Petitioner has failed to show actual and not merely theoretical irreparable harm. *See, e.g.*, *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). Petitioner claims (at 20) a sort of philosophical harm to "state sovereignty" or "federalism," but does not identify any inability to enforce its own laws by dint of having its plan disapproved, particularly where that plan did not actually require any additional emission controls. A simple disagreement with EPA about the agency's authority cannot be bootstrapped into "irreparable" harm by pointing to "federalism principles." Mot. at 20.

Nor does Petitioner's theorized need to evaluate potential permit applications constitute irreparable harm. Petitioner merely claims that

12

it will take "substantial" time and resources to process applications, but does not identify any specific dollar figures, timelines, or personnel-hours so implicated, or how any purported work-crunch is not owing to Petitioner's admitted "17% vacancy" in staffing (Mot. Ex. M-015), or its own delay until now in seeking a stay of the February 13, 2023 Disapproval Rule. *See, e.g.*, *Memphis A. Philip Randolph Inst. v. Hargett*, 977 F.3d 566, 568 (6th Cir. 2020) (denying motion for stay where claimed harms arose "[p]artly from defendants' own doing"). Petitioner fails to demonstrate irreparable harm.

## III. A Stay Would Disserve the Public Interest.

Petitioner makes clear it belatedly moved for a stay here to block the Good Neighbor Plan. *See* Mot. at 1 n.1, 20. But maintaining the massive public health benefits from the Good Neighbor Plan serves the congressionally-recognized public interest. Because ozone pollution seriously harms public health and welfare, timely attainment of the NAAQS is the Act's core requirement. *See Wisconsin*, 938 F.3d at 316. Accordingly, contrary to West Virginia's complaint (at 11) that EPA moved too quickly with the Good Neighbor Plan, EPA was obligated to issue a federal rule implementing the Good Neighbor Provision for

13

states without approved SIPs in time for downwind attainment deadlines, *i.e.*, by the 2023 ozone season's springtime start.[12] 42 U.S.C. § 7410(c)(1); *see Wisconsin*, 938 F.3d at 315, 318 ("the Good Neighbor Provision calls for elimination of upwind States' significant contributions on par with the relevant downwind attainment deadlines," "even if the outer limit of the statutory timeframe gives EPA more time to formulate the [federal plan]"); 42 U.S.C. § 7511(a), (b)(1) (setting deadline of 6 years from designation for moderate nonattainment areas); 83 Fed. Reg. 25,776 (June 4, 2018) (designating nonattainment areas); 88 Fed. Reg. at 36,657 (requiring emission reductions before attainment deadlines).

Issuing a stay would disrupt the complex, interwoven, and long-awaited Good Neighbor Plan, undermine timely attainment of the 2015 ozone standard, contrary to the Clean Air Act, and harm public health and the environment. That result would disserve the public interest.

## CONCLUSION

For the foregoing reasons, Petitioner's motion should be denied.

---

[12] EPA missed the 2021 marginal attainment deadline. *See* 42 U.S.C. § 7511(a), (b)(1).

14

/s/ Zachary M. Fabish
Zachary M. Fabish
Sierra Club
50 F St NW, 8th Floor
Washington, DC 20001
650-388-8446
zachary.fabish@sierraclub.org

Joshua D. Smith
Sierra Club
2101 Webster Street, Suite 1300
Oakland, California 94612
415-977-5560
joshua.smith@sierraclub.org

*Counsel for Sierra Club*

/s/ Seth L. Johnson
Seth L. Johnson
Kathleen L. Riley
Neil Gormley
Earthjustice
1001 G St. NW, Ste. 1000
Washington, DC 20001
202-797-5245
202-745-5227
202-797-5239
sjohnson@earthjustice.org
kriley@earthjustice.org
ngormley@earthjustice.org

*Counsel for Sierra Club and
Appalachian Mountain Club*

Filed: August 2, 2023

## CERTIFICATE OF COMPLIANCE

The undersigned counsel states that this filing complies with Fed. R. App. P. 27(d)(2)(A) because it contains 2,580 words, excluding the caption, signature blocks, and required certifications, as counted by a word processing system and, therefore, is within the word limit. This motion also complies with typeface requirements of Fed. R. App. P. 27(d)(1)(E) because it has been prepared in a proportionally spaced typeface in 14-point Century Schoolbook font.

Dated: August 2, 2023

/s/ Seth L. Johnson
Seth L. Johnson
Counsel for Amici